Exhibit 1

*Law Offices of*

# William Johnson, LLC

**1310 L St. NW**
**Suite 750**
**Washington, D.C. 20005**
**(202) 525-2958**
**(202) 431-2650**
**FAX (202) 525-2961**
**www.DCMDConsumerlaw.com**
**WJohnson@DCMDConsumerlaw.com**

William C. Johnson, Jr., Esq, MBA, LLM-MD,DC

## RETAINER AGREEMENT

The undersigned, **Trudah Harding** (hereinafter known as Client) hereby requests the legal services of **William C. Johnson, Jr. Esq., MBA, LL.M** (hereinafter known as Attorney) for representation regarding a Foreclosure Complaint filed in Montgomery County involving the foreclosure sale of real property identified as 13604 Canal Vista Court, Potomac, MD 20854 in case no. 463268-V. Attorney shall defend Trudah Harding in the action.

Legal services shall require a non-refundable retainer fee of **$5,000.00**. Attorney acknowledges receipt of $ _5000_ .00. Legal services will be billed on an hourly basis, with time being charged in tenths of an hour, at the following rates:

| | | | |
|---|---|---|---|
| Partners | $405.00 per hour | Paralegals | $50.00 per hour |
| Associates | $100.00 per hour | Law Clerks | $25.00 per hour |

Attorney will use his/her discretion in staffing, to provide services in the most economical manner possible. Please note that all time spent on your behalf in this matter, including time spent in telephone conversations, will be charged to you. The initials of the person performing the services will be noted on the invoice.

The fee of Attorney shall be contingent upon the result obtained. There shall be no legal obligation by Client to pay Attorney any fee if nothing is recovered from the adversary or from the Client's insurer in an underinsured or uninsured situation.

However, Client is responsible for all expenses incurred in the prosecution of the claim. Client gives permission to Attorney to advance the payment of costs and expenses, but Client acknowledges the Client remains responsible for payment of said costs and expenses and agrees to reimburse Attorney for any such costs and expense for

which Attorney advances payment. Client may reimburse Attorney as costs and expenses are incurred or, if Client reimburses Attorney upon settlement, Client agrees that such costs and expenses shall be paid out of Client's portion of the settlement proceeds.

In the event there is a recovery of damages, the legal fee of Attorney shall be 33 percent of the gross amount damages and/or value recovered, if settlement is achieved without the necessity of filing suit; 40 percent of the gross amount of damages and/or value of the settlement or judgment if it is necessary to file suit; and 45 percent of the ultimate gross amount of damages and/or value of the settlement or judgment following the trial and any appeal undertaken by the adversary.

In the event of discharge by Client and in the event Client subsequently recovers money or other property as a result of this action, Client shall be indebted to Attorney for legal fees based upon the value in the District of Columbia of legal services rendered and for any costs and expenses advanced by Attorney.

Attorney reserves the right to withdraw from representation if Client fails to cooperate or follow Attorney's advice on a material matter, or if any fact or circumstance arises or is discovered that would, in Attorney's view, render continuing representation unlawful or unethical.

In addition to fees for legal services, Attorney will be entitled to payment or reimbursement for costs and expenses incurred for services, including but not limited to: photocopying, messenger and delivery service, fees for computerized research services, travel (including mileage, parking, air fare, lodging, meals and ground transportation), long distance telephone, telecopying, depositions, court costs, sanctions and filing fees. Client agrees that Client is responsible for such expenses relating to this case. Depending upon the type of case you have, expenses may also include, but are not limited to: medical treatment, charges for medical examinations and reports, the cost of accident and credit reports, hospital records and pictures. Attorney is hereby authorized to charge such expenses and have such expenses billed to Client and Client agrees to pay them promptly. Unless other arrangements are made at the outset, fees and expenses of others will not be paid by Attorney and will be the responsibility of and billed directly to the Client.

Client agrees that Attorney may retain co-counsel, and Attorney agrees that Client will be consulted concerning co-counsel and any fee arrangement with co-counsel prior to retention of or consultation with co-counsel by Attorney.

Client agrees to allow attorney to contact him via e-mail at the following address:

_____.

Invoices for legal services rendered and costs advanced or incurred are issued (indicate time interval, e.g. monthly) and are payable upon receipt. Interest at the rate of

1.5 percent per month will be added to the balance due on amounts which remain unpaid thirty (30) days or more.  Attorney shall be entitled to recoup reasonable Attorneys Fees in the event it becomes necessary to file suit for the collection of fees.

Attorney reserves the right to withdraw from representation if, among other things, Client fails to honor the terms of this **FEE AGREEMENT** by failing to pay Attorney's invoices, by failing to cooperate or follow Attorney's advice on a material matter, or if any fact or circumstance arises or is discovered that would, in Attorney's view, render our continuing representation unlawful or unethical.

The outcome of negotiations and litigation is subject to factors which cannot always be foreseen; therefore, it is understood that Attorney has made no promises or guarantees to Client concerning the outcome of this representation and cannot do so. Nothing herein shall be construed as such a promise or guarantee.

This **FEE AGREEMENT** pertains only to legal services rendered and costs and expenses for the matter expressly stated above.  It does not relate to any other matter for which Client seeks representation by Attorney.  Any other matter will require a separate **FEE AGREEMENT**.

Date: 3/18/2019          Client: _____

Date: 3/18/2019          Attorney: _____

MARYLAND DEPARTMENT OF ASSESSMENTS & TAXATION

# ADDRESS CHANGE REQUEST FORM

I, the undersigned, hereby request a permanent change of mailing address for the property listed below in *Montgomery* (Enter county name)

(Please type or print legibly, you may also fill this form out on your pc.)

| OWNERS NAME | DISTRICT & PROPERTY NUMBER (Baltimore City enter Ward, Section, Block and Lot) |
|---|---|
| Example: John T. Smith | 02 -123456 |
| Trudah Harding | 01827518 |
| | RECEIVED AUG 11 2017 ASSESSMENTS 4TH FL MONTGOMERY COUNTY MD |

### PRINT COMPLETE NEW ADDRESS

13604 Canal Vista Ct. Potomac Md. 20854

HOUSE NO.    STREET NAME    CITY    STATE    ZIP CODE

IS THE ~~NEW~~ ADDRESS YOUR PRINCIPAL RESIDENCE? *Yes*

PRINT NAME *Trudah Harding*

SIGNATURE *Trudah Harding*

If the owner of the property is a business give the name of a contact person and job title.

Title if applicable _____

DAYTIME PHONE *202 957-6629*

DATE *8-11-17*

Submit to the appropriate office where the property is located; a list of offices is attached.

Exhibit 3

| | |
|---|---|
| **Fill in this information to identify your case:** | |
| Debtor | **Trudah Abenella Harding** |
| United States Bankruptcy Court for the: | DISTRICT OF MARYLAND - SOUTHERN DIVISION |
| Case number | **19-15399** |
| (if known) | |

## Official Form 410
## Proof of Claim

4/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Hard Money Bankers, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

■ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Benjamin P. Smith, Esquire
Shulman Rogers Gandal Pordy and Ecker PA
12505 Park Potomac Avenue, 6th Floor
Potomac, MD 20854
Name, Number, Street, City, State & Zip Code

Contact phone    301-230-5241

Contact email    bsmith@shulmanrogers.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**Where should payments to the creditor be sent?** (if different)

Chris Haddon
Hard Money Bankers, LLC
10015 Old Columbia Road, Suite H-125
Columbia, MD 21045
Name, Number, Street, City, State & Zip Code

Contact phone    1-800-883-8290

Contact email    chris@hardmoneybankers.com

**4. Does this claim amend one already filed?**

■ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____

**5. Do you know if anyone else has filed a proof of claim for this claim?**

■ No
☐ Yes. Who made the earlier filing?

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

■ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ _____516,925.01_____ **Does this amount include interest or other charges?**

☐ No

■ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money loaned**

**9. Is all or part of the claim secured?**

☐ No

■ Yes. The claim is secured by a lien on property.

**Nature of property:**

■ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: **1st DOT on 13604 Canal Vista Court, Potomac, MD 20854**

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____

Amount of claim that is secured: $ _____516,925.01_____

Amount of claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____

Annual Interest Rate (when case was filed) ____24____ %

■ Fixed

☐ Variable

**10. Is this claim based on a lease?**

■ No

☐ Yes. Amount necessary to cure any default as of the date of the petition: $ _____

**11. Is this claim subject to a right of setoff?**

■ No

☐ Yes. Identify the property: _____

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

■ No

☐ Yes.   *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.   $ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

■ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  5/13/19
        MM/ DD /YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | **Chris Haddon** |
|---|---|
| Title | **President** |
| Company | **Hard Money Bankers, LLC** |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | **10015 Old Columbia Road, Suite H-125** |
| | **Columbia, MD 21046** |
| | Number, Street, City, State and Zip Code |
| Contact phone | **800-883-8290**    Email   **chris@hardmoneybankers.com** |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# Exhibit A

| Payoff Date | 4/20/2019 |
|---|---|
| Maturity Date | 1/1/2019 |
| Next Payment Due | 8/1/2018 |
| Interest Rate | 24.000% |
| Interest Paid-To Date | 7/1/2018 |
| Principal Balance | $415,000.00 |
| Unpaid Interest | $0.00 |
| Accrued Interest From 7/1/2018 To 4/20/2019 | $81,340.00 |
| Unpaid Late Charges | $0.00 |
| Accrued Late Charges | $7,470.00 |
| Unpaid Charges   *For additional details see itemization attached | $13,115.01 |
| Prepayment Penalty | $0.00 |
| Other Fees | $0.00 |
| Trust Balance | $0.00 |
| **Payoff Amount** | **$516,925.01** |

# COMMERCIAL FLAT RATE NOTE WITH BALLOON PAYMENT

**Lender Name:** Hard Money Bankers, LLC
**Lender Address:** 10015 Old Columbia Rd., Suite H-125, Columbia, Maryland 21046
**Borrower One:** Trudah Mills-Harding (a/k/a Trudah A. Mills and Trudah M. Harding), 619 Allison St., NW, Washington, DC 20011
**Interest Rate:** 13%
**Principal Amount:** $415,000.00
**Loan Term:** 12 Months
**Funding Date:** December 8, 2017
**Maturity Date:** January 1, 2019
**Loan Number:** ▮▮▮▮▮▮▮▮

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

FOR VALUE RECEIVED, the undersigned Borrower(s), Maker(s) and/or Guarantor(s) (hereinafter collectively the "Borrower") promises to pay **Hard Money Bankers, LLC** (hereinafter referred to as the "Holder" or "Lender"), at the address above, the principal sum of **Four Hundred Fifteen Thousand and 00/100 Dollars ($415,000.00)** ("Principal Balance"), together with interest from the above date at the interest rate of **Thirteen (13%) Percent** per annum on all sums advance to Borrower by Lender including, but not limited to, the unpaid Principal Balance, as well as any future advances made to Borrower ("Advances"), until paid. This is not a revolving loan and any amounts repaid or prepaid are not available for re-advance to the Borrower. This Note has a default rate as outlined hereinbelow. Interest shall be due on the entire amount of the Principal Balance commencing on the date of this Note, regardless of whether any part of the Principal Balance is withheld by Lender in a construction reserve, advance interest reserve, or otherwise. Interest shall be paid in arrears. The principal of this Note, plus accrued interest at the rate aforesaid, shall be due and payable as follows:

    a.    One (1) payment at the time of execution of this Note in the amount of **$26,975.00**, representing **Six** months of interest in advance ("Advance Interest"); and

    b.    Five (5) equal and consecutive interest only payments in the amount of **$4,495.83**, beginning on or before **August 1, 2018** and continuing each and every month thereafter; and

    c.    One (1) final balloon payment on or before **January 1, 2019**, at which time, unless sooner paid, the entire principal balance, together with accrued but unpaid interest thereon, and any costs, fees, premiums and expenses due under this Note or any other loan documents, shall be due and payable ("Maturity Date").

    1.    **Application of Payments.** All payments on this Note shall be made in lawful money of the United States of America and shall be applied first to any late charges and other fees, costs or charges provided for herein, all at the sole and absolute discretion of Lender, second to the payment of accrued but unpaid interest and the remainder to the reduction of principal. The Borrower shall make all payments when due, without set-offs of any nature. Any accrued interest remaining past due for 30 days or more shall automatically and without notice to Borrower be added to and become part of the unpaid Principal Balance and shall bear interest at the rate or rates specified in this Note, and any reference herein to "accrued interest" shall refer to accrued interest which has not become part of the unpaid Principal Balance.

    2.    **Late Charge/Dishonored Check.** There shall be a grace period of five (5) days for any payment due under this Note. The Borrower shall pay a late charge of 10% of the delinquent payment amount, or $50.00, whichever is greater, plus the cost and expenses incurred in collecting the delinquent amount, if such payment is received by Lender after the grace period. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any pre-authorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $50.00 (but not more than the maximum amount allowed by law) for each such event.

3. **Security**. To secure the payment and performance of obligations incurred under this Note, this Note shall be secured by and subject to the terms of one or more of the following, all of which are dated the same date hereof: (a) a Deed of Trust from the Borrower which encumbers real property and improvements located at **13604 Canal Vista Ct., Potomac, Maryland 20854** (the "Property"); (b) an Unconditional and Continuing Guaranty Agreement from **n/a** for the benefit of the Lender (the "Guaranty"); (c) a Construction Reserve Agreement by and between Borrower and Lender (the "Construction Agreement"); (d) UCC Financing Statements filed in the appropriate registry as Lender deems appropriate; (e) other documents, affidavits, agreements and/or written instruments between Borrower, Guarantor and/or Lender related to this Note. All of the above referenced documents shall be collectively referred to as the "Security Documents."

All of the terms, covenants, provisions, conditions, stipulations, promises and agreements contained in the Security Documents and/or any other documents related to this Note to be kept, observed and performed by the Borrower are hereby made a part of this Note and are incorporated herein by reference to the same extent and with the same force and effect as if they were fully set forth herein, and the Borrower promises and agrees to keep, observe and perform them, or cause them to be kept, observed and performed, strictly in accordance with the terms and provisions thereof, and the maturity hereof is subject to acceleration as therein set forth. Both this Note and the Security Documents are given in consideration of a loan of even date herewith in the amount of the principal sum by the Lender to the Borrower.

In addition to any real or personal property described herein, Borrower grants Lender a security interest in all of Borrower's right, title and interest in all monies and instruments of Borrower that are now or in the future in Lender's custody or control.

4. **Events of Default.** An Event of Default will occur under this Note in the event that Borrower, any guarantor or any other third party pledging collateral to secure this Note:

a. Fails to make any payment of principal and/or interest or any other sum due hereunder when the same is due pursuant to the terms of this Note;

b. Makes an assignment for the benefit of creditors, or admits in writing of being unable to pay his/her/its debts as they become due, or files a petition in bankruptcy, or be adjudicated a bankrupt or insolvent, or files a petition seeking any arrangement, composition, readjustment or similar relief under any present or future statute, law or regulation, or files an answer admitting or not contesting the material allegations of a petition filed against him/her/it in any such proceeding, or seeks or consents to or acquiesces in the appointment of any trustee or receiver;

c. Fails to perform or violates any obligations or covenants under the terms of this Note or any Security Documents or any other present or future written agreements regarding this Note or any other indebtedness or obligations between Borrower, guarantor or such third party and Lender, related to this Property or any other property;

d. Defaults under the terms of any note, deed of trust, mortgage, security instrument, or any other loan documents or written agreements for any other loans secured by the Property;

e. Sells or otherwise conveys any property which constitutes security or collateral for the payment of this Note without the prior written consent of the Lender and/or the destruction, loss or damage to such collateral in any material respect and/or the seizure, condemnation or confiscation of the collateral;

f. Provides or causes to be provided any false or misleading signature or representation to be provided to Lender;

g. Permits the entry of or has any type of garnishment, judgment, tax levy, attachment or lien issued, entered or served against him/her/them/it, or against any property being pledged as collateral for this Note or any other property of such Borrower, guarantor or third party;

h. Dies, becomes legally incompetent, is dissolved or terminated, or ceases to operate its business;

i. Fails to provide Lender evidence of satisfactory financial condition;

j. Has a majority of its outstanding voting securities sold, transferred or conveyed to any person or entity other than any person or entity that has the majority ownership as of the date of the execution of this Note;

k. Causes Lender to deem itself insecure due to a significant decline in the value of any real or personal property securing payment of this Note, or Lender, in good faith believes the prospect of payment or performance is impaired;

l. Fails to keep an insurance policy in place on the Property naming Lender as the mortgagee and/or as the loss payee including its successor and/or assigns;

m. Fails to keep property taxes current on property used as security for this Note.

5. **Rights of Lender On Event of Default**. In the Event of Default as set forth herein, or in the event of the breach of any covenant or obligation contained in the herein referred to Deed of Trust or the Security Documents on the

part of the undersigned to be kept, observed or performed, the Lender, at its sole and absolute discretion, may exercise one or more of the following remedies without notice or demand (except as required by law):

     a.    Declare the entire unpaid balance of principal of this Note, along with accrued and unpaid interest thereon and all other charges, costs and expenses, provided for herein and in the Security Documents immediately due and payable. Such acceleration shall be automatic and immediate in the Event of Default is a filing under the Bankruptcy Code;

     b.    Collect the outstanding obligations of Borrower with or without judicial process;

     c.    Cease making advances under this Note or any other agreement between Borrower and Lender;

     d.    Take possession of any property used as collateral for this Note in any manner permitted by law;

     e.    Require Borrower to deliver and make available to Lender any property used as collateral for this Note at a place reasonably convenient to Borrower and Lender;

     f.    Sell, lease or otherwise dispose of any property used as collateral for this Note and collect any deficiency balance with or without resorting to legal process;

     g.    Assume any and all mortgages/deeds of trust in existence at the time of default on all property/collateral securing loans made to Borrower;

     h.    Set-off Borrower's obligations against any amounts due to Borrower including, but not limited to, monies and instruments, maintained with Lender; and

     i.    Exercise all other rights available to Lender under any other written agreement or applicable law.

Immediately upon the occurrence of an Event of Default and without notice to Borrower or any other party, the unpaid Principal Balance (including all accrued and unpaid interest made part of the Principal Balance as set forth herein) shall bear interest at the "Default Rate" set forth in this Note, and shall continue to bear interest at the Default Rate until and including the date on which all amounts due under this Note are paid in full. Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months. Furthermore, if payment on this Note is stayed or suspended under any proceeding pursuant to the United States Bankruptcy Code, or any other bankruptcy or insolvency proceeding, the interest on this Note shall continue to accrue between the time of the filing of the bankruptcy/insolvency petition/proceeding and approval of any Bankruptcy/Insolvency Plan. Borrower shall make all payments of principal and interest under this Note without relief from valuation and appraisement laws.

Lender may, in Lender's sole and absolute discretion, agree to reinstate this Note after this Note has been accelerated, but is not obligated to do so. If Lender agrees to reinstate this Note, then in addition to any other amounts (including but not limited to default interest, fees, costs and expenses), Borrower agrees to pay a reinstatement fee ("Reinstatement Fee") equal to Ten Percent (10%) of the then outstanding unpaid principal balance of the Note. The calculation of such Reinstatement Fee shall be made without regard to any escrows or reserves held by Lender pursuant to any documents or agreements related to this Note.

Lender's remedies in this Section are in addition to any available at common law and nothing in this Section shall impair any right which the Lender has under this Note, or at law or in equity, to accelerate the debt on the occurrence of any other Event of Default, whether or not relating to this Note. Lender's rights or remedies as provided in this Note shall be cumulative and concurrent and may be pursued singly, successively, or together against Borrower or any guarantor or third party (without first having to proceed against Borrower), at Lender's sole and absolute discretion. Borrower shall pay to Lender on Lender's demand the amount of all expenses incurred by Lender (a) in enforcing it's rights under this Note, or (b) as the result of a default by Borrower under this Note, including but not limited to the cost of collecting any amount owed hereunder, and any reasonable attorney's fees. The failure by Lender to exercise any of its options contained herein shall not constitute a waiver of the right to exercise such option in the event of any subsequent default.

     6.    **Costs and Expenses.** To the extent permitted by law, Borrower agrees to pay any and all reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Note, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions. Said collection fees shall be in the minimum amount of 15% of the amount of the judgment as collected (or, if collected without judgment, a minimum fee of 15% of the amount collected), which attorney's fee shall not be diminished by any other fees, costs or damages, but in no event shall the attorney's fees be less than $3,000.00.

7. **Extensions.** The Borrower shall remain liable for the payment of all amounts due under this Note notwithstanding any extension or extensions of time of payment or any indulgence of any kind or nature that the Lender may grant or permit any subsequent owner of the encumbered property, whether with or without notice to the Borrower and the Borrower hereby expressly waives such notice.

8. **Confessed Judgment.** UPON ANY DEFAULT BY THE BORROWER AS SET FORTH IN THIS NOTE, AND TO THE EXTENT PERMITTED BY LAW, THE BORROWER HEREBY DULY CONSTITUTES AND APPOINTS ANY DULY LICENSED ATTORNEY TO APPEAR AND WAIVE THE ISSUANCE AND SERVICE OF PROCESS AND CONFESS A JUDGMENT AGAINST THE BORROWER IN ANY COURT OF COMPETENT JURISDICTION IN THE STATE OF MARYLAND IN FAVOR OF THE HOLDER OF THIS PROMISSORY NOTE IN THE FULL AMOUNT DUE ON THIS PROMISSORY NOTE (INCLUDING PRINCIPAL, ACCRUED INTEREST AND ANY AND ALL PENALTIES, FEES AND COSTS) PLUS COURT COSTS AND ATTORNEY FEES IN THE MINIMUM AMOUNT OF FIFTEEN PERCENT (15%) OF THE UNPAID BALANCE OF PRINCIPAL, INTEREST, PENALTIES, OR OTHER SUMS DUE HEREUNDER (BUT IN NO EVENT SHALL ATTORNEY'S FEES BE LESS THAN $3,000.00), AND TO RELEASE ALL PROCEDURAL ERRORS AND WAIVE ALL RIGHTS OF APPEAL. IF THE CONFESSION OF JUDGMENT ABOVE PROVIDED FOR IS AUTHORIZED OR RECOGNIZED BY THE LAW OF THE JURISDICTION CONTROLLING BUT SUCH LAW REQUIRES SPECIAL FORMALITIES AND PROCEDURE, THEN THE SAID ATTORNEY IS EMPOWERED TO EXECUTE THE NECESSARY FORM AND COMPLY WITH SUCH SPECIAL PROCEDURES. THE BORROWER ACKNOWLEDGES AND AGREES THAT JURISDICTION AND VENUE SHALL BE PROPER IN SUCH COURT AND IN ANY OTHER COURT IN THE STATE OF MARYLAND. THE BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE, OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE OF EXEMPTION, HOMESTEAD RIGHTS, STAY OF EXECUTION, OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS THE HOLDER SHALL DEEM NECESSARY OR ADVISABLE, FOR ALL OF WHICH THIS NOTE SHALL BE SUFFICIENT WARRANT. HOLDER ACKNOWLEDGES THAT ATTORNEY FEES ARE STATED TO BE FIFTEEN PERCENT (15%) SOLELY FOR THE PURPOSE OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION, AND HOLDER AGREES THAT IN ENFORCING ANY SUCH JUDGMENT BY CONFESSION, THE HOLDER SHALL NOT DEMAND, SOLELY WITH RESPECT TO ATTORNEY FEES INCURRED BY THE HOLDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT HAS BEEN RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF ATTORNEY FEES CHARGED OR BILLED TO THE HOLDER. THE RIGHT TO CONFESS A JUDGMENT AS AFORESAID SHALL BE IN ADDITION TO, AND NOT TO THE EXCLUSION OF, ALL OTHER RIGHTS OR REMEDIES THAT THE HOLDER MAY HAVE.

9. **Forbearance.** The Lender shall not by any act or omission to act be deemed to waive any of its rights or remedies hereunder unless such waiver is in writing and signed by the Lender and then only to the extent specifically set forth therein. A waiver on one occasion shall not be construed as continuing or as a bar to or waiver of such right or remedy on any other occasion. All remedies conferred upon the Lender by this Note or any other instrument or agreement connected herewith or related hereto shall be cumulative and none is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option.

10. **Modification and Waiver.** Borrower and/or every person at any time liable for the payment of the debt evidenced hereby, waives the exercise of all exemption rights which it holds at law or in equity concerning to the debt evidenced by this Note whether under state constitution, homestead laws or otherwise. Borrower and any endorsers or guarantors hereof severally waive valuation and appraisement, presentment and demand for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, protest or notice of protest and nonpayment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereof, and trial by jury in any litigation arising out of, relating to, or connected with this Note or any instrument given as security herefor. Additionally, neither the Borrower nor Borrower's affiliates or family members shall have any right of subrogation, reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of the Borrower or to any collateral which secures in whole or in part the indebtedness evidenced by this Note, unless and until all such indebtedness shall have been paid and the obligations hereunder and under the other Security Documents shall have been paid and performed in full, and if any party which constitutes the Borrower shall be deemed an "insider" (as that term is used in the Bankruptcy Code), then all rights of subrogation are waived.

From time to time, without affecting Borrower's obligation to pay any sums due under this Note and perform Borrower's covenants herein, without affecting the obligations of any endorser hereto or guarantor hereof, without giving notice to or obtaining the consent of Borrower or any endorser hereto or guarantor hereof, and without liability on the part of the Holder, Holder may, acting it its sole and absolute discretion, extend the Maturity Date or any other time for payment of interest hereon and/or principal hereof, reduce the payments hereunder, release anyone liable under this Note accept a renewal of this Note, modify the terms and time of payment of this Note, join in any extension or subordination or exercise any option or election hereunder, modify the rate of interest or period of amortization or principal due date of this Note, or exercise any option or election hereunder. No one or more such actions shall constitute a novation.

11. **Voluntary and Involuntary Prepayments.**

Any prepayment shall be made under this Note as provided below:

a. Borrower may voluntarily make a full prepayment of this Note on a Business Day ("Full Prepayment"). Such Full Prepayment shall be made by paying (i) the full amount of unpaid principal balance of this Note, (ii) all accrued interest due Lender, (iii) all other fees, costs, expenses or other sums due Lender at the time of such Full Prepayment, and (iv) the prepayment premium calculated pursuant to Section 11(e) of this Note ("Prepayment Premium");

b. Borrower may not voluntarily make less than a Full Prepayment of this Note (a "Partial Prepayment") without prior written approval by Lender. A permitted or approved Partial Prepayment shall neither diminish the amount of the Prepayment Premium or Borrower's obligation to pay same, nor extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing;

c. Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to all other sums due Lender, the Prepayment Premium. Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a Partial Prepayment by Borrower, requiring the payment to Lender of the Prepayment Premium;

d. Borrower recognizes that any Full Prepayment or Partial Prepayment, whether voluntary or involuntary, or whether resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating the Prepayment Premium herein represents a reasonable estimate of the damages Lender will incur because of a prepayment. Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for Lender providing a loan to Borrower, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions;

e. Any Prepayment Premium payable under this Section 11 shall be computed as follows:

i. If the prepayment is made between the date of the initial funding of the loan evidenced by this Note and **March 8, 2018** (the "Prepayment Premium Period"), the Prepayment Premium shall be the interest at the Note rate herein that would be earned on the full Note amount for balance of the Prepayment Premium Period.

ii. If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no Prepayment Premium due.

iii. If the prepayment is made as a result of the application of any insurance proceeds or condemnation award, there shall be no Prepayment Premium due.

12. **Default Rate.** Upon the occurrence of an Event of Default, interest under this Note shall accrue on the unpaid Principal Balance from the earlier of the due date of the first unpaid monthly installment or the occurrence of such Event of Default, as applicable, at a rate (the "Default Rate") equal to the lesser of **Eleven (11)** percentage points above the rate stated in the first paragraph of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid Principal Balance and all accrued interest are not paid in full on the Maturity Date, the unpaid Principal Balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more

or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in the first paragraph of this Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments. Lender shall impose the Default Rate without any notice requirement to Borrower, guarantor or any third party pledging collateral as security for this Note.

13. **Loan Charges/Maximum Rate Permitted By Law.** Neither this Note nor any of the other Security Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with this Note is interpreted so that any interest or other charge provided for in any Security Document, whether considered separately or together with other charges provided for in any other Security Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note. If Lender reasonably determines that the interest rate (together with all other charges or payments that may be deemed interest) stipulated under this Note is or may be usurious or otherwise limited by law, the unpaid balance of this Note, with accrued interest at the highest rate permitted to be charged by stipulation in writing between Lender and Borrower, at the option of Lender, shall immediately become due and payable.

14. **Waiver of Jury Trial.** THE BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS NOTE OR ANY SECURITY DOCUMENTS OR ANY OTHER ACTIONS, CLAIMS, SUITS OR PROCEEDINGS WITH RESPECT TO OR ARISING FROM THIS NOTE. THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER, AND THE BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER WAIVES ANY RIGHT BORROWER MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE AND THE LOAN AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS NOTE.

15. **Notices/Service of Process.** Any notice or other communication required, permitted or desirable under the terms of this Note shall be sufficiently given if (a) in writing, and (b) sent to each party at the addresses shown at the top of this Note (or in this Paragraph, as applicable).

Borrower's Email Address: _Qhard 1448@ aol.com_ [BORROWER TO COMPLETE]
Lender's Email Address: chris@hardmoneybankers.com

Further, any notice, demand, consent, approval, request or other communication or document to be given hereunder to a party hereto shall be deemed to have been given (i) on the 3rd business day after being sent as certified or registered mail in the United States mails, postage prepaid, return receipt requested, or (ii) on the next business day after being deposited (with instructions to deliver it on that business day) with a nationally recognized overnight courier service, with all charges prepaid, or (iii) on the same date of delivery on being sent by email to the email address(es) listed below, or (iv) on the same date of delivery on being given by hand (regardless of whether the party's receipt thereof is acknowledged in writing or whether the party refuses delivery) or other actual delivery to the party.

By signature hereon, the Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note and/or under the terms of the Security Documents by mailing a copy thereof by certified mail, postage prepaid, return receipt requested, to them at the address at the top of this Note. Borrower irrevocably agrees that such service shall be deemed in every respect to be effective service of process upon Borrower in any such suit, action or proceeding. Nothing herein, however, shall in any way affect the right of Lender to serve process in any manner otherwise permitted by law and nothing in this Note will limit the right of the Lender otherwise to bring proceedings against the Borrower in a court or courts of appropriate jurisdiction.

16. **Entire Agreement/Severability.** The terms and conditions of this Note together with the terms and conditions of the Deed of Trust which are incorporated herein by reference as if set forth fully herein contain the entire understanding between the Borrower and Lender with respect the indebtedness evidenced hereby. Such understanding may not be modified, amended or terminated except in a written document duly executed by Borrower and Lender. In the event that any one or more of the provisions set forth in this Note or any accompanying Arbitration Agreement is determined by law to be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired hereby, and each provision in this Note shall be construed liberally in favor of Lender to the fullest extent of the law.

17. **Joint and Several Liability/Credit Reporting.** The liability of the undersigned, as well as any endorsers and/or guarantor(s), shall be both joint and several. This Note shall be binding upon the personal representatives, executors, heirs, successors and assigns of Borrower and Lender. Information concerning this Note may be reported to credit reporting agencies and will be made available when requested by proper legal process.

18. **Governing Law/Consent to Jurisdiction.** BORROWER ACKNOWLEDGES AND AGREES THAT THIS NOTE SHALL BE DEEMED TO BE DELIVERED AND MADE IN THE STATE OF MARYLAND, AND THAT THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE STATE OF MARYLAND NOTWITHSTANDING THE FACT THAT IT MAY HAVE BEEN EXECUTED ELSEWHERE. UNLESS APPLICABLE LAW PROVISES OTHERWISE, BORROWER IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN THE STATE OF MARYLAND OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING THIS NOTE. THE BORROWER IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT HE/SHE/THEY/IT MAY NOW OR HEREAFTER HAVE TO LAYING THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT AND ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. FINAL JUDGMENT IN ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON THE BORROWER AND MAY BE ENFORCED IN ANY COURT TO THE JURISDICTION OF WHICH THE BORROWER IS SUBJECT, BY A SUIT UPON SUCH JUDGMENT, PROVIDED THAT SERVICE OF PROCESS IS EFFECTED UPON THE BORROWER IN A MANNER SPECIFIED IN THIS NOTE OR AS OTHERWISE PERMITTED BY APPLICABLE LAW.

19. **Construction.** As used herein, Person means a natural person, trustee, corporation, partnership, limited liability company or other legal entity, and all references made (a) in the neuter, masculine or feminine gender shall be deemed made in all genders, (b) in the singular or plural number shall also be deemed made in the plural or singular number, and (c) to any Section, subsection, paragraph or subparagraph shall, unless therein expressly indicated to the contrary, be deemed made to that part of the Note. The headings of those parts are provided only for convenience of reference, and shall not be considered in construing their contents. Each document referred to herein as being attached hereto as an exhibit or otherwise designated herein as an exhibit hereto shall be a part hereof.

20. **Time of Essence.** Time shall be of the essence of this Note but, other than as to payment of principal and/or interest as required herein, if the last day for Borrower to exercise a right or perform a duty hereunder is not a Business Day, Borrower shall have until the next Business Day to do so. For purposes of this Note, a "Business Day" means any day other than a Saturday, Sunday or Federal statutory holiday.

21. **Assignment.** Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender, which consent may be withheld by Lender in its sole discretion. Borrower agrees that Lender is entitled to assign some or all of its rights and remedies described in this Note without notice to or the prior consent of Borrower.

22.     **Commercial Purpose.** It is expressly stipulated, warranted and agreed that the loan evidenced by this Note (and documents related thereto) is a "commercial loan" under applicable State or Federal law including, but limited to, Section 1603(1) of Title 15 of the United States Code, that the proceeds from the loan evidenced by this Note exceed $15,000.00, and that all proceeds shall be used for business, commercial or investment purposes and expressly not for personal, family or household purposes.

BORROWER ACKNOWLEDGES THAT NONE OF THE BORROWER'S PRINCIPALS, EMPLOYEES, CONTRACTORS OR AGENTS OR THEIR RESPECTIVE FAMILY MEMBERS SHALL RESIDE IN THE PROPERTY USED AS COLLATERAL FOR THIS NOTE AND THAT SUCH PROPERTY SHALL IN NO WAY CONSTITUTE OWNER-OCCUPIED PROPERTY. RATHER, THE PROPERTY CONSTITUTES AN INVESTMENT PROPERTY AND THE LOAN EVIDENCED BY THIS NOTE IS A BUSINESS LOAN AND NOT A CONSUMER LOAN.

23.     **Consent To Relief From Automatic Stay.** Borrower hereby agrees that if any of them shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (ii) be the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended; (iii) file or be the subject of any petition seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) seek, consent to or acquiesce in the appointment of any trustee, receiver, conservator or liquidator; (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against Borrower for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or from any other stay or suspension of remedies imposed in any other manner with respect to the exercise of the rights and remedies otherwise available to Lender under this Note or the Security Documents, or any other documents related to this Note.

24.     **Financial Information.** Borrower will at all times keep proper books of record and account in which full, true and correct entries shall be made in accordance with generally accepted accounting principles and will deliver to Lender, within ninety (90) days after written demand by Lender, a copy of Borrower's income tax returns as well as a copy of the annual financial statements of Borrower relating to the most recent fiscal year, such statement to include (i) the balance sheet of Borrower as at the end of such fiscal year (ii) the related income statement, statement of retained earnings and statement of cash flow of Borrower for such fiscal year, prepared by such certified public accountants as may be reasonably satisfactory to Lender. Borrower also agrees to deliver to Lender from time to time, upon written demand by Lender, such other financial information with respect to Borrower as Lender may request.

25.     **Loan Fees.** Concurrently with the closing of the loan evidenced by this Note, and from the proceeds thereof, Borrower shall pay to Lender origination, broker, funding, commitment, valuation/appraisal and/or other loan fees, all as set forth on a Settlement Statement executed by Borrower simultaneously herewith. In addition to any other fees due under this Note or paid at closing of this Loan, Borrower agrees to pay to Lender an additional loan fee in the amount of **$0.00** (the "Additional Loan Fee"). All loan fees referenced in this Paragraph are deemed fully earned and non-refundable upon execution of this Note and shall not be credited or offset against principal, interest or any other amounts due hereunder. Although the Additional Loan Fee shall be deemed earned at the time of execution of this Note as all other loan fees, it shall be payable at either a) payoff of the Note; or b) Maturity Date, whichever of these events occur first. If there is an Event of Default, the Additional Loan Fee shall become immediately due and payable without any notice to Borrower and shall be added to the principal amount of this Note and shall accrue interest at the Note rate stated herein. By signature hereon, Borrower authorizes Lender to include the Loan Fee in any payoff statements and authorizes any closing agent or attorney or party conducting settlement to send the Loan Fee directly to Lender without any further consent from Borrower

26.     **Lender Indemnification.** In consideration of Lender providing a loan and the funds under this Note to Borrower, and notwithstanding any other recourse available to Lender at law or in equity, the Borrower, and their affiliates and their respective employees, officers, directors and shareholders, do hereby agree to defend and save Lender harmless from and against any and all claims, counterclaims, cross-claims, actions, causes of action, suits, proceedings, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature (including reasonable attorneys' fees), whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity, or otherwise, incurred or sustained by Lender, involving, arising out of or relating to this Note, the Security Documents, other documents related to this Note or the loan associated with this Note, the property which is being used as collateral for this Note and/or the transaction contemplated hereby, whether before or after repayment and

performance of the indebtedness evidenced by this Note and the obligations of the Borrower under the Security Documents. The obligations of Borrower and the rights of Lender under this Note shall survive payment of said indebtedness and performance of said obligations and shall remain in full force and effect without termination.

THE PERSONS SIGNING BELOW ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN AMPLE OPPORTUNITY TO READ THIS AGREEMENT AND SEEK INDEPENDENT LEGAL COUNSEL AND ACKNOWLEDGE THEY HAVE COMPLETELY READ AND UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS OF THIS NOTE AND VOLUNTARILY GRANT TO LENDER ALL RIGHTS SET FORTH HEREIN AND FURTHER ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS NOTE.

Borrower:

_____ (SEAL)
Trudah Mills-Harding (a/k/a Trudah A. Mills and Trudah M. Harding)

_____ (SEAL)

Date: __12/8/17__

STATE OF __District of Columbia__ COUNTY OF _____ ; ss:

On this __8th__ day of __December__, 20__17__, before me, a notary public, personally appeared **Trudah Mills-Harding (a/k/a Trudah A. Mills and Trudah M. Harding)** to me known (or proved to me on the basis of satisfactory evidence) to be the person(s) who executed the foregoing instrument and acknowledged the same for the purpose therein contained and in my presence signed and sealed the same.

_____
NOTARY PUBLIC

My Comm. Expires:_____

S. KATHRYN ALLEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2019

**File Name:** ▮▮▮▮
**Title Insurer:** Fidelity Nat'l Title Ins Co
**This is** _____ **is not** _✔_ **a Purchase Money Deed of Trust**
**Purchase Money Amount: $**_____ • _____

MONTGOMERY COUNTY, MD
Tax ID No: 06-01827518
APPROVED BY_____ _MP_

JAN 1 8 2018

$ **578.50** RECORDATION TAX PAID
$ **N/A** TRANSFER TAX PAID
_Title Ins: Fidelity_

AFTER RECORDING, RETURN TO:

_____
_____
_____

# DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

THIS DEED OF TRUST dated this _8th_ day of _December_, 20_17_ from **Trudah Mills-Harding (a/k/a Trudah A. Mills and Trudah M. Harding)**, a DC resident whose address is 619 Allison St., NW, Washington, DC 20011(the "Borrower" or "Grantor"), to **Jeffrey P. Shiller** (the "Trustee"), whose address is 6100 Day Long Ln., Suite 100, Clarksville, Maryland 21092, for the benefit of **Hard Money Bankers, LLC**, with an address of 10015 Old Columbia Rd., Suite H-125, Columbia, Maryland 21046 and any successor holder of the Note secured by this Deed of Trust (the "Lender" "Grantee" or "Noteholder") as Beneficiary.

1.00 RECITALS

1.01 The Loan -- Grantor is indebted to Beneficiary for the Loan in the principal sum of **Four Hundred Fifteen Thousand and 00/100 Dollars ($415,000.00)** as evidenced by the Note of Grantor.

1.02 Obligations Secured -- This Deed of Trust secures (a) the full and punctual payment of the Loan according to the terms of the Note, (b) the payment of all sums due to Beneficiary or Trustees according to the terms of any of the Loan Documents, and (c) the performance of, and compliance with, all of the obligations of the Grantor (express or implied) contained in the Loan Documents.

2.00 DEFINITIONS -- Whenever capitalized in this Deed of Trust, the following terms shall have the meaning given in this Section 2.00, unless the context clearly indicates a contrary intent.

2.01 Assignment of Rents and Leases -- "Assignment of Rents and Leases" means the Assignment of Rents and Leases as set forth in Section 7.06 hereof in favor of Beneficiary.

2.02 Lender/Grantee/Beneficiary/Noteholder – "Lender" "Grantee" "Beneficiary" or "Noteholder" all mean **Hard Money Bankers, LLC** his/her/their/its personal representatives, heirs, successors and/or assigns, and any subsequent holder of the Note.

2.03 Controlling Party -- "Controlling Party" means any Person, directly or indirectly, possessing the power to direct or cause the direction of the management and policies of Grantor, whether through the ownership or control of voting securities or rights, by contract or otherwise.

2.04 Deed of Trust -- "Deed of Trust" means this instrument, including all current and future supplements, amendments, and attachments thereto.

2.05 Default – "Default" means: (a) the failure of Grantor to perform, cause to be performed, abide by, comply with, or observe any duty or obligation imposed upon Grantor by this instrument or the Loan Documents; (b) the breach of any of Grantor's warranties or covenants contained in any of the Loan Documents; (e) a misrepresentation by Grantor, its counsel, or any other Person on behalf of Grantor, in any of the Loan Documents; and (d) any event, happening, or condition which would constitute an Event of Default if not cured within any applicable grace period.

2.06 Encumbrances -- "Encumbrances" includes all liens, mortgages, rights, leases, restrictions, easements, deeds of trust, covenants, agreements, rights of way, rights of redemption, security interests, conditional sales agreements, land installment contracts, options, and all other burdens or charges.

2.07 Event of Default – "Event of Default" has the meaning given and provided in Section 10.01.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0070, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

2.08 Expense Account -- "Expense Account" means the Account which may, at Lender's discretion, be maintained pursuant to Section 6.02.

2.09 Grantor -- "Grantor" means the party identified as such in the introductory paragraph of this Deed of Trust, his/her/their/its personal representatives, heirs, successors and/or assigns, including any subsequent owner of all or any portion of Grantor's interest in the Trust Property.

2.10 Ground Lease -- "Ground Lease" means a Lease recorded at **Liber ---, Folio ---** among the Land Records of Baltimore City, Maryland.

2.11 Guaranty -- "Guaranty" means the Guaranty Agreement in favor of the Beneficiary executed by **n/a** pursuant to which he/she/they/it guarantee(s), among other things, the full and prompt payment and performance of the Grantor's obligations under the Loan Documents.

2.12 Land -- "Land" means the land more particularly described in **Exhibit A** to this Deed of Trust.

2.13 Law -- "Law" means all federal, state, county, and municipal laws, regulations, rules, and ordinances, and all rules, regulations and orders of any other governmental authority including common law and rulings, decisions and interpretations of all judicial, quasi-judicial, and administrative bodies.

2.14 Lease -- "Lease" means each lease which purports to convey any interest of Grantor in any portion of the Trust Property and includes subleases and assignments of leases.

2.15 Legal Action -- "Legal Action" includes all suits or other proceedings brought at law or in equity or before any administrative agency, governmental body, or arbitrator which in any manner relate to the Trust Property or arise out of or relate to any of the Loan Documents.

2.16 Loan -- "Loan" means the loan by the Beneficiary to the Borrower in the principal amount as set forth herein above and as evidenced by the Note and Loan Documents.

2.17 Loan Documents -- "Loan Documents" means this Deed of Trust, the Note, the Assignment of Rents and Leases, the Guaranty, and any and all certificates, opinions, assignments and other documents executed in connection herewith or therewith, and all current and future supplements, amendments, and attachments thereto.

2.18 Note of Grantor or Note. -- "Note of Grantor" or "Note" means the promissory note of Grantor or Borrower of even date herewith in the principal sum of **$415,000.00**, payable to the order of Beneficiary and evidencing the Loan, including all current and future supplements, amendments and attachments thereto.

2.19 Operate -- "Operate" means to operate, use, manage, lease, contract, and control, including the right to repair, renew, replace, alter, add, better, and improve.

2.20 Penalty Rate -- "Penalty Rate" means the "Default Rate" as defined pursuant to the terms and provisions of the Note executed simultaneously herewith, during the time period that the Penalty Rate is applicable.

2.21 Permitted Encumbrances -- "Permitted Encumbrances" means this Deed of Trust and all Encumbrances as to which Beneficiary has given its prior written approval, liens arising for real estate taxes or public charges for sewage, water, drainage or other public improvements not yet due and payable, liens being contested as permitted herein, and Leases not in violation of Section 7.04.

2.22 Person -- "Person" means any individual, corporation, partnership, association, trust, joint venture, or any other legal entity.

2.23 Property -- "Property" has the meaning given in Section 3.03.

2.24 Real Property -- "Real Property" means the Land, together with the improvements and rights identified in Section 3.01 and all other portions of the Trust Property which may legally be deemed to be real property under Section 3.07.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0071, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0072, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

2.25 Rent -- "Rents" includes all rents, profits, royalties, issues, revenues, income, proceeds, earnings, and products generated by or arising out of the Trust Property.

2.26 Risk -- "Risk" includes risk of loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil strife, civil commotion, aircraft, vehicles, smoke, vandalism, malicious mischief, boiler explosion, and any other risk customarily insured against by persons operating property similar in kind to the Trust Property.

2.27 Taking -- "Taking" includes any taking by condemnation or eminent domain, any sale in lieu of condemnation under threat thereof, the alteration of the grade of any street, or any other injury to or decrease in the value of the Trust Property by any public or quasi-public authority or corporation or any other person having the power of eminent domain.

2.28 Taxes -- "Taxes" includes all taxes, excises, documentary stamp and transfer taxes, recording taxes, assessments, water rents, sewer rents, metropolitan district charges, sanitary district charges, public dues, and other public charges levied or assessed upon the Trust Property, upon the Loan, or upon any Loan Document.

2.29 Tenant -- "Tenant" means any lessee of Grantor under any Lease, and any sub-lessee or assignee of a Lease.

2.30 Trustees -- "Trustees" means those persons named in the introductory paragraph including any additional, successor, replacement, or substitute trustees permitted by Section 9.02.

2.31 Trust Property -- "Trust Property" has the meaning given in Section 3.06.

2.32 Uniform Commercial Code -- "Uniform Commercial Code" means Title 9 of the Commercial Law Article of the Annotated Code of Maryland and any amendments thereto or reenactments thereof.

## 3.00 GRANTING CLAUSES

3.01 Lien on Real Property – The Grantor, in consideration of the Loan and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, grants and assigns to the Trustee in trust, with full power of sale, the **fee simple** property located in **Montgomery County**, Maryland, which is more particularly described as follows:

**SEE LEGAL DESCRIPTION ATTACHED AS "EXHIBIT A" AND INCORPORATED HEREIN**

**PROPERTY ADDRESS:  13604 Canal Vista Ct., Potomac, Maryland 20854**

Together with (a) all buildings and improvements now or hereafter located thereon, (b) all rights, rights of way, air rights, riparian rights, franchises, licenses, easements, tenements, hereditaments, appurtenances, accessions and other rights and privileges now or hereafter belonging to the Land or the buildings and improvements thereupon, now owned or hereafter acquired by the Grantor.

3.02 Lien on Fixtures and Personal Property -- The Grantor further grants and assigns to the Trustees all of the machines, apparatus, equipment, fixtures and articles of personal property now or hereafter located on the Land or in any improvements thereon (other than that owned by any Tenant) and all the right, title and interest of the Grantor in and to any of such property which may be subject to any title retention or security agreement or instrument having priority over this Deed of Trust.

3.03 Property -- All of the property described in Sections 3.01 and 3.02 is hereinafter collectively called the "Property".

3.04 Lien on Leases and Rents and Other Rights -- The Grantor further grants and assigns to the Trustees (a) all Leases and Rents, including, without limitation, all cash or security deposits to secure performance by Tenants (whether such cash or securities are to be held until the expiration of the terms of Leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms), (b) all of the estate, right, title, use, claim and demand of every nature whatsoever, at law or in equity, which the Grantor may now have or may hereafter acquire in and to the Property, and (c) all right, title and interest of the Grantor in and to all extensions, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Property, hereafter acquired by or

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0073, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

released to the Grantor, or constructed, assembled or placed by or for the Grantor on the Property, and all conversions of the security constituted thereby.

3.05 Lien on Insurance Policies and Condemnation Awards -- The Grantor further grants and assigns to the Trustees all insurance policies and insurance proceeds pertaining to the Property and all awards or payments, including interest thereon and the right to receive the same, which may be made with respect to any of the Property as a result of any taking or any injury to or decrease in the value of the Property.

3.06 The Trust Property -- All of the property described in this Article 3.00 is collectively called the "Trust Property."

3.07 Security Interest Under the Uniform Commercial Code -- Any portion of the Trust Property which by law is or may be real property shall be deemed to be a part of the Real Property for the purposes of this Deed of Trust. The remainder of the Trust Property shall be subject to the Uniform Commercial Code and this Deed of Trust shall constitute a Security Agreement with respect thereto. Grantor hereby grants to the Beneficiary a security interest in that portion of the Trust Property not deemed a part of the Real Property for the purpose of securing performance of all of Grantor's obligations under the Loan Documents. With respect to such security interest (a) the Beneficiary may exercise all rights granted or to be granted a secured party under the Uniform Commercial Code and (b) upon the occurrence of an Event of Default the Beneficiary shall have a right of possession superior to any right of possession of the Grantor or any person claiming through or on behalf of the Grantor.

## 4.00 HABENDUM CLAUSE AND DEFEASANCES

4.01 Habendum Clause -- The Trustees shall have and hold the Trust Property in fee simple, upon the terms and trust herein set forth.

4.02 Termination of the Trust -- If all obligations of Grantor under this Deed of Trust and the other Loan Documents, are paid and satisfied in accordance with the terms hereof and thereof, the estate hereby granted shall cease and the Trust Property shall be released to the Grantor, at the cost of the Grantor.

## 5.00 REPRESENTATIONS AND WARRANTIES

5.01 Warranty of Title and Further Assurances -- The Grantor warrants that he/she/they/it has the right and authority to convey the Trust Property and warrants generally title to the Trust Property and will execute such further assurances as may be requested.

5.02 Purpose of the Loan -- The Grantor warrants that the Loan is a "commercial loan" as defined in the Annotated Code of Maryland. All proceeds of the Loan are being used for business and investment purposes and not for personal, family or household purposes, and the Loan is being secured by investment property and not a principal place of residence of any Grantor, Borrower or Guarantor.

5.03 Existence, Good Standing, Power and Authority of Grantor -- In the event Grantor is a corporation, limited liability company, or other entity, Grantor represents and warrants Grantor is in good standing in the State of its formation and in the State in which the property resides, and will maintain its good standing and existence until all of Grantor's obligations under the Loan Documents have been performed and satisfied. The execution and delivery of the Loan Documents, the carrying out of the transactions contemplated by the Loan Documents, and the performance of Grantor's and any guarantor's obligations under the Loan Documents, have been duly authorized by all necessary action and will not conflict with or result in a breach of Law or any agreement or other instrument to which Grantor or any guarantor is bound.  The Loan Documents are valid and binding on Grantor and any guarantor thereof and are enforceable against Grantor and each such guarantor in accordance with their respective terms, as applicable.

## 6.00 COVENANTS, RIGHTS, AND DUTIES OF GRANTOR GENERALLY

6.01 Covenant to Pay Loan and to Perform Obligations Under the Terms of the Loan Documents -- The Grantor covenants that it will punctually (a) pay to the Beneficiary the principal and interest of the Loan and all other costs and indebtedness secured hereby according to the terms of the Note and other Loan Documents, and (b) perform and satisfy all other obligations of the Grantor under the Loan Documents. Unless applicable law provides otherwise, all payments received from Borrower under the Note or this Deed of Trust shall be applied by Lender in the order of priority set forth in

the Note.

6.02 Expense Account --

6.02.1 Upon written request of the Beneficiary, the Grantor will pay to the Beneficiary the sum of (a) the estimated annual premiums for all insurance policies required by Sections 8.01, 8.02 and 8.03 hereof, and (b) the estimated annual Taxes pertaining to the Trust Property, to be held by the Beneficiary in the Expense Account and disbursed by the Beneficiary to pay the insurance premiums as they become due and Taxes before any penalty or interest shall accrue thereon. Estimates are to be made solely by the Beneficiary and payments shall be made on the date designated by the Beneficiary. No interest shall be payable by the Beneficiary on the Expense Account unless, and then only to the extent that, applicable Law shall otherwise require. All overpayments to the Expense Account shall be applied to reduce future payments to the Expense Account, if any, or shall be returned to the Grantor, in the sole discretion of the Beneficiary.

6.02.2 Upon the request of the Beneficiary, the Grantor shall pay such additional sums into the Expense Account as the Beneficiary determines are necessary, so that one month prior to the date the Beneficiary is required to make payments of insurance premiums, or Taxes, as the case may be, payments can be made therefor out of the Expense Account.

6.02.3 The Grantor hereby grants the Beneficiary a security interest in the sums on deposit in the Expense Account to secure the obligations secured hereby, and upon the occurrence of an Event of Default, the Beneficiary may, unless prohibited by applicable Law, apply the balance of the Expense Account to Operate the Trust Property or to satisfy Grantor's obligations under the Loan Documents, as the Beneficiary may elect.

6.03 Compliance with Laws -- The Grantor shall comply with all Laws, including Federal, State or local laws, rules and regulations relating to the Loan and the Trust Property, a breach of which would materially and adversely affect (a) the financial condition of the Grantor, (b) the ability to use buildings and other improvements on the Land for the purposes for which they were designed or intended, (c) the value or status of the Trust Property, or (d) the value or status of the Trustee's or Beneficiary's title to the Trust Property.

6.04 Notice with Respect to Ownership and Control of Grantor --

6.04.1 If Grantor is a corporate borrower, and if permitted by the Loan Documents, Grantor will promptly notify Beneficiary of all changes in the ownership of the stock or interests of Grantor and any other change with respect to the identity of a Controlling Party. At any time Beneficiary may request, Grantor shall furnish a complete statement, sworn to under penalty of perjury by an officer or authorized member of Grantor, setting forth all of the stockholders, officers, directors, members and Controlling Parties of Grantor, and the extent of their respective ownership or control. In the event the Grantor is aware of any other Person having a beneficial interest in the corporate borrower, the statement shall also set forth the name of such Person and the extent of their interest.

6.04.2 If Grantor is a partnership, and if permitted by the Loan Documents, Grantor will promptly notify Beneficiary of all changes in ownership of partnership interests of Grantor and any other change with respect to the identity of a Controlling Party. At any time Beneficiary may request, Grantor shall furnish a complete statement, sworn to under penalty of perjury by a general partner of Grantor setting forth all of the partners of Grantor and the extent of their respective partnership interest or control. In the event the Grantor is aware of any other Person having a beneficial interest in such partnership interests, the statement shall also set forth the name of such Person and the extent of their interest.

6.05 Changes in Applicable Tax Laws -- In the event (a) any Law is hereafter enacted which imposes a Tax upon the Loan, any of the Loan Documents, or the transactions evidenced or contemplated by any of the Loan Documents, or (b) any Law now in force governing the taxation of deeds of trust, debts secured by deeds of trust, or the manner of collecting any such Tax shall be changed or modified, in any manner, so as to impose a Tax upon the Loan, any of the Loan Documents, or the transactions evidenced or contemplated by any of the Loan Documents, (including, without limitation, a requirement that revenue stamps be affixed to any or all of the Loan Documents), the Grantor will promptly pay any such Tax. If the Grantor fails to make prompt payment, or if any Law either prohibits the Grantor from making the payment or would penalize the Beneficiary if Grantor makes the payment, then the failure, prohibition, or penalty, shall entitle the Beneficiary to exercise all rights hereunder as though an Event of Default had occurred.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0074, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0075, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

6.06 Further Assurances and Continuation Statements – If requested by Lender, the Grantor will execute, acknowledge, deliver and record, at the Grantor's sole cost and expense, all further instruments, deeds, conveyances, supplemental deeds of trust, assignments, financing statements, transfers, and assurances as in the opinion of the Beneficiary's counsel may be necessary (a) to preserve, continue, and protect the interest of the Trustees or the Beneficiary in the Trust Property, (b) to perfect the grant to the Trustees of every part of the Trust Property, (c) to facilitate the execution of this trust, (d) to secure the rights and remedies of the Trustees and the Beneficiary under this Deed of Trust and the other Loan Documents, or (e) to transfer to any new Trustees or purchaser at a sale hereunder the Trust Property, funds, and powers now or hereafter held in trust hereunder. The Grantor, at the request of the Beneficiary, shall promptly execute any continuation statements required by the Uniform Commercial Code to maintain the lien on any portion of the Trust Property subject to the Uniform Commercial Code.

6.07 Expenses – The Grantor shall reimburse the Beneficiary and the Trustees for any sums, including attorney's fees and expenses, incurred or expended by them (a) in connection with any action or proceeding to sustain the lien, security interest, priority, or validity of any Loan Document, (b) to protect, enforce, interpret, or construe any of their rights under the Loan Documents, (e) for any title examination or title insurance policy relating to the title to the Trust Property, or (d) for any other purpose contemplated by the Loan Documents. The Grantor shall, upon demand, pay all such sums together with interest thereon at the Penalty Rate accruing from the time the expense is paid. All such sums so expended by the Beneficiary and/or the Trustees shall be secured by this Deed of Trust. In any action or proceeding to foreclose this Deed of Trust or to recover or collect the Loan, the provisions of Law allowing the recovery of costs, disbursements, and allowances shall be in addition to the rights given by this Section.

6.08 Environmental Matters -- The Grantor covenants and agrees as follows:

6.08.1 The Grantor warrants and represents that it has investigated or caused to be investigated the current and previous ownership and uses of the Property, in a manner consistent with current and good commercial practices and in scope and detail necessary to make the determinations required by this paragraph, and that such investigation has revealed no fact, event or condition with respect to the Property, or any activity conducted thereon, on or at any time prior to the date hereof, that constitutes or constituted non-compliance with, interferes with or prevents continued compliance by the Grantor with, or gives rise to any present or potential liability of the Grantor under, any law, regulation, rule, ordinance, license, permit, certificate or authorization related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport, handling, emission, discharge, release, threatened release or other regulated activity into the environment, of any Regulated Substance (as defined herein). This investigation has taken into account, among other factors, (i) the relationship of the purchase price to the value of the Property if uncontaminated when originally purchased by the Grantor, (ii) commonly known and all reasonably ascertainable information about the Property, obtained from individual and governmental sources, and (iii) the obviousness of the presence or likely presence of contamination on the Property.

As used in this Deed of Trust, "Regulated Substance" means any pollutant, contaminant, hazardous waste, hazardous substance, toxic substance or toxic waste or any other material referred to in or subject to regulation under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act (SARA), the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq., the Toxic Substance Control Act (TSCA), 15 U.S.C. §§ 2601 et seq.., the Clean Air Act, 42 U.S.C. §§ 7401 et seq., the Clean Water Act, 33 U.S.C. §§ 1251 et seq., all as amended, and all regulations under any of the foregoing, and all similar federal, state and local laws and regulations including without limitation those which may be stricter or more inclusive than the foregoing federal laws, now in force or hereinafter amended or enacted (collectively, the "Environmental Laws"). "Regulated Substance" includes, in addition to all of the foregoing and without limitation, asbestos, polychlorinated biphenyls (PCBs), petroleum products, lead-based paints, and bio-contaminants, including without limitation mold and anthrax.

6.08.2 The Grantor warrants and represents that it has disclosed to the Noteholder all pending or threatened litigation, judicial or administrative in nature, and all orders, rulings, permits, notices and threatened or pending investigations regarding Regulated Substances on the Property.

6.08.3 The Grantor and any other parties, including, but not limited to, tenants, licensees and occupants, will not conduct or be involved in any activity or use other than Regulated Substances ordinarily and customarily utilized in the sales and service of motor vehicles, which Substances shall be stored and utilized in accordance with all applicable laws and regulations, on or near the Property, which activity or use could involve or lead to (i) manufacture, processing, distribution, use, treatment, storage, disposal, transport, handling, emission, discharge, release, threatened release or

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0076, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

other regulated activity into the environment, of any Regulated Substance; or (ii) the imposition of liability on the Grantor or any other subsequent or former owner of the Property or the creation of a lien on the Property under any Environmental Laws.

6.08.4 The Grantor warrants and represents that it has not agreed or committed to indemnify or hold harmless any party, except those indemnified by this Deed of Trust, from or against any present or potential liability under any Law with respect to any fact, event or condition on the Property.

6.08.5 The Grantor warrants and represents that it has not treated, stored, disposed of, handled, discharged, released, or emitted into the environment any Regulated Substance, nor has the Grantor contracted or otherwise arranged for any of the foregoing, which may form the basis for any claim, demand, action, or liability, or which may give rise to any obligation to engage in or compensate any party for any cleanup, removal, remediation or abatement of such substances on or in the Property, or any property, structure, soil, air, surface water, groundwater or sediments or otherwise on or near the Property.

6.08.6 The Grantor will comply strictly and in all respects with the requirements of the Environmental Laws and shall promptly notify the Noteholder in the event of the discovery of Regulated Substances at the Property. Further, the Grantor will promptly forward to the Noteholder, in the manner required for notices to the Noteholder, copies of all orders, notices, permits, applications or other communications and reports in connection with any use, release, discharge, spillage, or the discovery of any Regulated Substance or any other matters within the scope of Environmental Laws as they may affect the Property.

6.08.7 The Grantor agrees that if at any time the Noteholder has reasonable cause to believe there are any Regulated Substances upon the Property, or at any time after the occurrence of an event of default under the Note, this Deed of Trust or any other Loan Document, the Noteholder may obtain, at the Grantor's cost and expense, an environmental site assessment or environmental audit report from a firm reasonably acceptable to the Noteholder, to assess with a reasonable degree of certainty (i) the presence of any Regulated Substances and (ii) the prudent course and options in connection with the abatement, cleanup and/or removal thereof, and the cost thereof.

6.08.8 The Grantor agrees that in the event of the presence of any Regulated Substance upon the Property, whether or not the same originates or emanates from the Property and whether or not the same results from the Grantor's activities or use of the Property, or if the Grantor shall fail to comply with any of the requirements of the Environmental Laws, the Noteholder may at its election, but without the obligation to do so, (i) give such notices, (ii) cause such work to be performed at the Property or (iii) take any and all other actions as the Noteholder shall reasonably deem necessary or advisable in order to abate, cleanup and/or remove the Regulated Substance or otherwise cure the Grantor's noncompliance.

6.08.9 The Grantor acknowledges that the Noteholder has made the Loan and other advances secured by this Deed of Trust and the other Loan Documents in reliance upon the Grantor's representations, warranties and covenants in this paragraph. Accordingly, the Grantor and the Noteholder agree that the provisions of this paragraph and paragraph 6.10 hereof shall supersede any provisions in the Note, this Deed of Trust or any other Loan Document executed by the Grantor or any other persons liable for the obligations hereunder, which in any way limit the personal liability of the Grantor or any such other person for the obligations hereunder. Further, the Grantor shall be personally liable for all expenditures, costs and expenses made by, incurred by or asserted against the Noteholder arising under this paragraph even if such expenditures, costs and expenses exceed the amount of the Loan. All of the representations, warranties and covenants of this paragraph shall survive the repayment of the Loan and termination, satisfaction or release of this Deed of Trust.

6.09.10 Any amounts disbursed by the Noteholder pursuant to the provisions of this paragraph shall be added to, and deemed a part of, the obligations hereunder, shall be secured in the same manner as the Note is secured shall bear interest from the date of the disbursement thereof at the same rate of interest as set forth in the Note, and shall, together with the interest thereon, be repayable by the Grantor on demand.

6.10 Indemnity – The Grantor shall protect, defend, indemnify and save harmless the Trustees and the Lender from, against and in respect of, any and all losses (including diminution in the value of the Trust Property), costs, damages, liabilities, obligations, claims, causes of action, fines, penalties and expenses (including reasonable attorneys' fees, expenses and litigation costs, sums paid in settlements of claims and any such fees and expenses incurred in enforcing this indemnity or collecting any sums due hereunder) and expenses for accounting, consulting, engineering,

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0077, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

investigation, cleanup, removal and/or disposal and other remedial costs incurred to permit continued or resume normal operations of activities on or use of the Trust Property, directly or indirectly imposed upon or incurred by or asserted against the Trustees, the Lender, its directors, officers, agents, employees, successors or assigns, or any of them, by any other party or parties (including, without limitation, a governmental entity), arising out of or in connection with (a) ownership of the Trust Property or any interest therein, or receipt of any Rents or other sums therefrom, (b) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Trust Property or the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, (c) any use, nonuse or condition of the Trust Property or the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, (d) any failure on the part of the Grantor or any other person liable for the obligations hereunder to perform or comply with any of the terms, covenants, conditions and agreements set forth in this Deed of Trust, the Note or any other Loan Document executed by the Grantor or any such other person liable for the the obligations hereunder, (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Trust Property or any part thereof for construction or maintenance or otherwise, (f) any action brought against the Trustees or the Lender attacking the validity, priority or enforceability of this Deed of Trust, the Note or any other Loan Document, (g) the use, generation, refining, manufacture, transportation, transfer, production, processing, storage, handling, or treatment of any Regulated Substance on, under, from, or affecting the Trust Property or any other property; (h) the presence, disposal, dumping, escape, seepage, leakage, spillage, discharge, emission, pumping, emptying, injecting, leaching, pouring, release, or threatened release of any Regulated Substance on, under, from, or affecting the Trust Property or any other property; (i) the clean-up, removal or disposal of any Regulated Substance on, under, from or affecting the Trust Property or any other property required by this Deed of Trust or any governmental authority; (j) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Regulated Substance, including any damage arising out of any clean-up required by the governmental authorities or Environmental Laws; (k) any lawsuit brought or threatened, settlement reached, or government order relating to such Regulated Substance; (1) any violation of laws, orders, rules, regulations, requirements, guidelines, or demands of government authorities, including Environmental Permits, which are based upon or in any way related to such Regulated Substance including, without limitations, the costs and expenses of any remedial action, reasonable attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses; or (m) a material misrepresentation or inaccuracy in any representation or warranty or a material breach of or failure to perform any covenant made by Grantor in this Deed of Trust; and/or (n) any present or future violation of any Laws. Any amounts payable to the Trustees or the Lender under this paragraph shall be added to, and deemed a part of, the obligations hereunder, shall be secured in the same manner as the Note is secured, shall bear interest from the date of the Trustees' and/or the Lender's demand for payment thereof at the same rate of interest as set forth in the Note and shall, together with the interest thereon, be payable by the Grantor on demand. In the event any action, suit or proceeding is brought against the Trustees, the Lender or the directors, officers, agents of employees of the Lender by reason of any such occurrence, the Grantor, upon the request of the Trustees or the Lender and at the Grantor's expense, shall resist and defend such action, suit or proceeding or cause the same to be resisted and defended by counsel designated by the Grantor and approved by the Trustees and/or the Lender. Such obligations under this paragraph shall survive the repayment of the Loan and termination, satisfaction or release of this Deed of Trust.

## 7.00 RIGHTS AND DUTIES OF GRANTOR WITH RESPECT TO MANAGEMENT AND USE OF THE TRUST PROPERTY

7.01 Control by the Grantor -- Until the happening of an Event of Default, the Grantor shall have the right to possess and enjoy the Trust Property and to receive the Rents.

7.02 Management -- At all times the Grantor shall provide competent and responsible management to Operate the Trust Property. If the Beneficiary so requests, all management and service contracts involving the Trust Property shall be subject to approval in writing by the Beneficiary prior to their execution and, once approved by Beneficiary, shall not be amended or terminated without Beneficiary's prior written approval.

7.03 Financial Statements; Books and Records – If requested by the Beneficiary, the Grantor shall furnish to the Beneficiary annual financial and operating statements of the Grantor and of the Trust Property. Such statements shall show all items of income and expense for the operation of the Trust Property, shall be certified by the Grantor and shall be prepared in accordance with generally accepted accounting principles applied on a consistent basis. All such financial and operating statements shall be supplied not later than one hundred and twenty (120) days after the close of Grantor's fiscal year. The Grantor agrees to make its books and records relating to the operation of the Trust Property available for inspection by the Beneficiary, upon request at any reasonable time, at Grantor's principal place of business or at such other location in the State of Maryland as Beneficiary may reasonably request.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0078, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

7.04 Leases -- All Leases shall be subject to the prior written approval of the Beneficiary, and shall contain a provision prohibiting subleasing or assigning by any Tenant without the prior written approval of the Beneficiary, which approval shall not be unreasonably withheld. The Grantor will comply with its obligations under all Leases. The Grantor, within thirty (30) days after written request from the Beneficiary, shall deliver to the Beneficiary a detailed list and description of all Leases with copies thereof and such additional information as may be requested by the Beneficiary. Upon demand by the Beneficiary, Grantor will transfer and assign to the Beneficiary or the Trustees, in a form satisfactory to the Beneficiary, Grantor's interest in any Lease as further security for the obligations secured hereby. No such assignment shall impose upon the Trustees or the Beneficiary any liability to perform the Grantor's obligations under any Lease.

7.05 Enforcement of Leases, Amendment, Waiver, etc. -- The Grantor will enforce all Leases according to their terms and shall take such action to that end as may be requested by the Trustees or the Beneficiary, regardless of whether any such Lease has been assigned to the Beneficiary or the Trustees. The Grantor shall not, without the prior written consent of the Beneficiary (a) cancel or terminate, or consent to or accept any cancellation, termination, or surrender of any Lease, or permit any event within the Grantor's control to occur which would terminate or cancel any Lease, (b) amend or modify any Lease, (c) waive any default under or breach of any Lease, (d) consent to or permit any prepayment or discount of rent or advance rent under any Lease, or (e) give any consent, waiver, or approval under any Lease or take any other action with respect to any Lease which may impair the value of the Beneficiary's interest in the Trust Property or the position or interest of the Trustees with respect to the Trust Property. Grantor shall comply with and perform all duties and obligations imposed upon or assumed by it in all Leases.

7.06 Assignment of Rents; Appointment of Receiver; Lender in Possession – As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender, all the Rents of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the Rents of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid Rents and hereby directs each tenant of the Property to pay such Rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Deed of Trust, Borrower shall collect and receive all Rents of the Property as trustee for the benefit of Lender and Borrower, to apply the Rents so collected to the sums secured by the Loan Documents with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment of additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in the Loan Documents, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all Rents of the Property as the same become due and payable, including but not limited to Rents then due and unpaid, and all such Rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such Rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Lender's written demand to each tenant, therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said Rents, that Borrower has not performed, and will not perform, any acts or has not executed, and will not execute, any instrument which would prevent Lender from exercising its rights under this Paragraph, and that at the time of execution of the Loan Documents there has been no anticipation or prepayment of any of the Rents of the Property for more than two months prior to the due dates of such Rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any Rents of the Property more than two months prior to the due dates of such Rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of Rents of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in the Loan Documents, Lender may in person, by agent or by a court-appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all Rents of the Property, the filing of any suit to collect the Rents or evict any tenant/lessee, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all

on such terms as are deemed best to protect the security of the Lender in Lender's sole discretion. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in the Loan Documents, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All Rents collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in the Loan Documents shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property and then to the sums secured by the Loan Documents.Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those Rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property by reason of anything done or left undone by Lender under this Paragraph.

If the Rents of the Property are not sufficient to meet the costs of taking control of and managing the Property and collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note (or Penalty Rate, as applicable) unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of Rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This Assignment of Rents of the Property shall terminate at such time as this Deed of Trust and/or the Loan Documents ceases to secure indebtedness held by Lender.

The Grantor shall not assign the Rents arising from the Trust Property or any part thereof or any interest therein without the prior written consent of the Beneficiary, except as assigned to Beneficiary herein. Any attempted assignment, pledge, hypothecation, or grant without such consent shall be null and void.

The Grantor hereby appoints Lender the true and lawful attorney-in-fact of Grantor, with full power of substitution, in Grantor's name and/or in Grantor's name, after an Event of Default hereunder, to sue for or make such settlement of claims as Lender may deem necessary or desirable in Lender's sole and absolute discretion, or otherwise demand, collect and receive all rents, issues and profits emanating from or related to the Trust Property or any part thereof, or any of leases related to the Loan or the Trust Property, and to apply the same as provided for in this Deed of Trust. This power of attorney shall be deemed to be coupled with an interest, shall be irrevocable, and shall not terminate on the disability of the Grantor. It is the intention of the Grantor that all persons or parties may rely upon this power of attorney, and continue to rely upon it, until This Assignment of Rents of the Property, Deed of Trust and/or the Loan Documents ceases to secure indebtedness held by Lender.

In the event of any other terms or covenants of this Deed of Trust or the Loan Documents conflict with the terms and covenants in this Paragraph, the terms and covenants of this Paragraph shall prevail.

7.07 Construction Loan Provisions -- Borrower agrees to comply with the covenants and conditions of the Construction Loan Agreement, if any, which is hereby incorporated by reference in and made a part of this Deed of Trust. All advances made by Lender pursuant to the Construction Loan Agreement shall be indebtedness of Borrower secured by this Deed of Trust. All such sums shall bear interest at the rate stated in the Note.

From time to time, and as Lender deems necessary to protect Lender's interests, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims which relate to the construction of the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property. In case of breach by Borrower of the covenants and conditions of the Construction Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, may invoke any of the rights or remedies provided in the Construction Loan Agreement, herein, or both.

7.8 Restriction on Encumbrances -- The Grantor shall not allow any Encumbrances on the Trust Property except

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0079, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

the Permitted Encumbrances. The Grantor shall give the Beneficiary prompt notice of any default in or under any Permitted Encumbrances and any notice of foreclosure or threat of foreclosure. The Grantor shall comply with its obligations under all Permitted Encumbrances. The Beneficiary may, at its election, satisfy any Encumbrance (other than a Permitted Encumbrance not then in default), and the Grantor shall, on demand, reimburse the Beneficiary for any sums advanced for such satisfaction together with interest at the Penalty Rate accruing from the date of satisfaction, which sums shall be secured hereby.

7.9 Maintenance, Waste, Repair and Inspection -- Grantor shall: (a) keep and maintain the Trust Property in good order, condition, and repair and make all fixture and equipment replacements and repairs necessary to insure that the security for the Loan is not impaired; (b) not commit or suffer any waste of the Trust Property; (c) promptly protect and conserve any portion of the Trust Property remaining after any damage to, or partial destruction of, the Trust Property; (d) promptly repair, restore, replace or rebuild any portion of the Trust Property which is damaged or destroyed; (e) promptly restore the balance of the Trust Property remaining after any Taking; (f) permit the Beneficiary or its designee to inspect the Trust Property at all reasonable times; and (g) not make any material change in the grade of the Trust Property or permit any excavation of or on the Trust Property.

7.10 Removal and Replacement of Equipment and Improvements -- No part of the Trust Property, except supplies consumed in the normal course of business and operations, or as a result of, and except as permitted under any applicable Construction Loan Agreement, shall be removed from the Land, demolished, or materially altered without the prior written consent of the Beneficiary. Any replacement fixtures or equipment shall be free of all Encumbrances, shall automatically be subject to the lien and security interest of this Deed of Trust, and shall automatically be subject to the granting clauses hereof.

7.11 Charges/Liens -- The Grantor shall pay (a) all water and sewer rates, rents, taxes, assessments, premiums and/or any other taxes, impositions or liens attributable to the Trust Property (other than those payable by the Beneficiary from the Expense Account) on or before the date any interest or penalty begins to accrue or attach thereto; and (b) all lawful claims which, if unpaid, might become a lien or charge upon the Trust Property to such an extent as to materially and adversely affect the Grantor's ability to use the Trust Property for the purposes for which it was designed or intended. If requested by Lender, Borrower shall promptly furnish to Lender receipts evidencing such payments.

Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Deed of Trust, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Trust Property. Borrower shall not allow any lien inferior to this Deed of Trust to be perfected against the Trust Property without Lender's prior written permission. Any violation of the provisions of this Paragraph shall constitute and Event of Default hereunder.

7.12 Restrictive Covenants, Zoning, etc. -- No restrictive covenant, zoning change, or other restriction affecting the Trust Property may be entered into, requested by or consented to by Grantor without the prior written consent of the Beneficiary.

7.13 Preservation of Appurtenances -- The Grantor will do all things necessary to preserve intact and unimpaired, all easements, appurtenances, and other interests and rights in favor of, or constituting any portion of, the Trust Property.

7.14 Restriction on Transfers -- The Grantor will not, without the prior written consent of the Lender, lease, bargain, sell, transfer, assign, further encumber or convey the Trust Property, or any portion thereof, or any legal or equitable interest therein, nor will the Grantor suffer or permit any such lease, bargain, sale, transfer, assignment, further encumbrance or conveyance. If the Grantor or any shareholder or partner of the Grantor is not a natural person but is a corporation, partnership, trust or other legal entity, then the bargain, sale, transfer or assignment of any legal or beneficial interest (including, without limitation, transfers resulting from mergers, consolidations or liquidations) in the Grantor or any such shareholder or partner of the Grantor without the prior written consent of the Lender shall be deemed to be in contravention of the provisions of the preceding sentence.

7.15 Future Advances -- Upon request of Borrower, Lender, at Lender's option so long as this Deed of Trust secures indebtedness held by Lender, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Deed of Trust. At no time shall the principal amount of the indebtedness secured by this Deed of Trust, not including sums advanced in accordance herewith to protect the security of this Instrument, exceed the original amount of the Note.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0080, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

## 8.00 INSURANCE AND CONDEMNATION

8.01 Casualty Insurance and Allocation in Event of Loss -- The Grantor shall keep the Trust Property insured for the benefit of the Grantor, the Trustees and the Beneficiary against all Risks. The limits, form, co-insurance clauses, and insurer for all such policies shall be satisfactory to the Beneficiary. The Grantor shall deliver to the Beneficiary all such policies. The policies shall contain a standard mortgagee loss payable endorsement providing that all payments shall be made to the sole order of the Trustees and the Beneficiary to be applied by them in accordance with the terms of this Deed of Trust. Within thirty (30) days prior to the expiration of any policy, the Grantor shall supply the Beneficiary with a renewal policy marked "Premium Paid." All proceeds under such policies shall be paid to the Trustees and the Beneficiary to be applied (a) if funds sufficient to restore the Trust Property are available from such insurance proceeds (together with other funds supplied or caused to be supplied b,, Grantor) and no Default is then outstanding, to the restoration of the Trust Property; or (b) if sufficient funds are not available to restore the Trust Property or a Default is then outstanding, to prepayment of amounts due under the Note in inverse order of maturity. All moneys not utilized for the restoration of the Trust Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity. If proceeds of insurance are used to restore the Trust Property, as aforesaid, neither Trustees nor the Beneficiary shall be obligated to see to the proper allocation thereof, nor shall any, such amount so used be deemed a payment of any indebtedness secured by, this Deed of Trust. Proceeds of insurance to be used for restoration purposes shall be held by the Beneficiary and disbursed under such terms and conditions, to such Persons, and at such times, as Beneficiary may determine.

8.02 Liability Insurance -- Unless waived by Trustees and Beneficiary, the Grantor will maintain liability and indemnity insurance with respect to the Trust Property in such amounts, with such companies, and subject to such terms and conditions as the Beneficiary may direct and approve. Such policies of insurance shall name the Trustees and the Beneficiaries as additional insureds thereunder and within thirty (30) days prior to the expiration of any such policy, the Grantor shall supply the Beneficiary with a renewal policy marked "Premium Paid".

8.03 Business Interruption Insurance -- Unless waived by Beneficiary, the Grantor shall also carry and maintain rental interruption insurance on the Trust Property in the same manner and under the same conditions (to the extent applicable) as provided in Section 8.02.

8.04 Condemnation and Allocation of Condemnation Awards -- Grantor, immediately upon obtaining knowledge of the institution of any proceeding for a Taking, will notify the Trustees and the Beneficiary of such proceedings. The Trustees or the Beneficiary, may participate in any such proceedings, and Grantor will, from time to time, deliver to the Trustees or the Beneficiary all instruments requested by them to permit such participation. Any award or payment made as a result of any Taking shall be paid to the Trustees and the Beneficiary, jointly, to be applied (a) if funds sufficient to restore the remainder of the Trust Property are available from such award or payment (together with other funds supplied or caused to be supplied by Grantor) and no Default is then outstanding, to the restoration of the remainder of the Trust Property, or (b) if sufficient funds are not available to restore the remainder of the Trust Property, or a default is then outstanding to prepayment of amounts due under the Note in inverse order of maturity. All moneys not utilized for the repair or restoration of the remainder of the Trust Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity. The application of any award or payment as a prepayment of amounts due under the Note shall take effect only on the actual date of the receipt of the payment or award by the Trustees and the Beneficiary. In the event any payment or award is used to restore the Trust Property, as aforesaid, neither the Trustees nor the Beneficiary shall be obligated to see to the proper allocation thereof nor shall any amount so used be deemed a payment of any indebtedness secured by this Deed of Trust. Payments or awards to be used for restoration purposes, as aforesaid, shall be held by the Beneficiary and disbursed under such terms and conditions, to such Persons, and at such times, as Beneficiary may determine.

## 9.00 THE TRUSTEES

9.01 Endorsement and Execution of Documents -- Upon the written request of the Beneficiary, the Trustees shall, without liability or notice to the Grantor, execute, consent to, or join in any instrument or agreement in connection with or necessary to effectuate the purposes of the Loan Documents. The Grantor hereby irrevocably designates the Trustees as Grantor's attorney-in-fact to execute, acknowledge, and deliver, on the Grantor's behalf and in the Grantor's name, all instruments or agreements necessary to to implement any provision of this Deed of Trust or to further perfect the lien created by this Deed of Trust on the Trust Property. This power of attorney shall be deemed to be coupled with an interest and shall survive any disability of the Grantor.

9.02 Substitution of Trustees -- The Beneficiary may, by filing a deed of appointment in the office where this

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0081, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

instrument is recorded, appoint additional or replacement trustees and may remove the Trustees, from time to time, without notice to the Grantor or the Trustees and without specifying any reason.

9.03 Multiple Trustees -- Any Trustee, individually, may exercise all powers granted to the Trustees collectively, without the necessity of the joinder of the other Trustees.

9.04 Terms of Trustees' Acceptance -- The Trustees accept the trust created by this Deed of Trust upon the following terms and conditions.

9.04.1 The Trustees may exercise any of their powers through appointment of attorneys-in-fact or agents.

9.04.2 The Trustees shall not be liable for any matter or cause arising under this Deed of Trust or in connection therewith except by reason of their own willful misconduct.

9.04.3 The Trustees may select and employ legal counsel at the expense of Grantor.

9.04.4 The Trustees shall be under no obligation to take any action upon any Event of Default unless they are furnished security or indemnity, in form satisfactory to the Trustees, against costs, expenses, and liabilities which may be incurred by the Trustees.

9.04.5 The Trustees shall have no duty to take any action except upon written demand of the parties to whom is then owed fifty-one percent (51%) or more of the then outstanding principal balance of the Note.

9.04.6 A Trustee may resign upon written notice to the Beneficiary.

9.05 Trustees' Reimbursement -- The Grantor shall reimburse the Trustees for all reasonable disbursements and expenses incurred by reason of this Deed of Trust.

## 10.00 DEFAULT

10.01 Event of Default -- The occurrence of any of the following shall constitute an Event of Default.

10.01.1 Monetary Defaults -- The failure of the Grantor to pay any amounts due under the Loan Documents when due and payable, whether at maturity, by obligation or election to prepay, or otherwise.

10.01.2 Breach of Representations and Warranties -- Any representation or warranty made by the Grantor herein or any statement or representation made in any of the Loan Documents shall prove to have been incorrect in any material respect when made or shall be breached.

10.01.3 Insurance Provisions -- The failure of Grantor to perform its obligations set forth in Section 8 hereof.

10.01.4 Receiver; Bankruptcy -- If the Grantor or any guarantor of the Loan (a) applies for, or consents in writing to, the appointment of a receiver, trustee, or liquidator for it of the Trust Property, or of all or substantially all of its or his assets, (b) files a voluntary petition in bankruptcy or admits in writing its inability to pay its debts as they become due, (c) makes an assignment for benefit of creditors, (d) files a petition or an answer seeking a reorganization, composition, adjustment. arrangement with creditors, or takes advantage of any insolvency law, (e) files an answer admitting the material allegations of a petition filed against it in any bankruptcy, reorganization, composition, adjustment, arrangement, or insolvency proceeding, or (f) is dissolved as a result of an adversary suit or proceeding.

10.01.5 Receiver; Bankruptcy (Involuntary) -- If (a) any execution or attachment levied against the assets of the Grantor or any guarantor of the Loan is not set aside, discharged, or stayed within sixty (60) days after the same was levied or within ten (10) days after the expiration of any stay thereof, (b) an order, judgment, or decree is entered by any court of competent jurisdiction on the application of a creditor, adjudicating the Grantor or any guarantor of the Loan a bankrupt or insolvent, or appointing a receiver, trustee, or liquidator for the Grantor or any guarantor, or of all or substantially all of its assets, or (c) an order of relief is entered against the Grantor or any guarantor pursuant to any bankruptcy statute or law and such order, judgment, or decree continues unstayed and in effect for a period of sixty (60) days and is not discharged within ten (10) days after the expiration of any stay thereof.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0082, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

10.01.6 Assignment of Rents -- Any attempted assignment by the Grantor of the whole or any part of the Rents in contravention of Section 7.06.

10.01.7 Prohibited Transfer or Encumbrance -- Any transfer or event in violation of Section 7 hereof.

10.01.8 Loss of License -- The loss of any franchise agreement, license or permit necessary for the operation, occupancy, or use of the Trust Property, if the same is not restored within thirty (30) days after the loss.

10.01.9 Judgments -- Any judgment against the Grantor or any guarantor of the Loan for an amount in excess of Ten Thousand and 00/100 Dollars ($10,000.00) remains unpaid, unstayed, undischarged, unbonded or undismissed for a period of thirty (30) days following the date which the judgment becomes final or any appeal thereof is finally determined.

10.01.10 Other Obligations -- Any obligation of the Grantor (other than the obligations secured hereunder) in excess of Ten Thousand and 00/100 Dollars ($10,000.00) becomes or is declared to be due and payable prior to the expressed maturity thereof and the same is not paid within thirty (30) days of the accelerated maturity date.

10.01.11 Other Defaults -- The failure of the Grantor to perform or observe any of its obligations or covenants under this Deed of Trust, the Note and/or the Loan Documents not specifically referred to in this Article 10.00.

10.01.12 Default under Other Liens/Loan Documents -- The failure of the Grantor to perform or observe any of its obligations or covenants in any lien or loan document other than this Deed of Trust, or any interest therein (legal or equitable), or any part thereof, either inferior or superior in right to the lien of this Deed of Trust.

10.01.13 Event of Default under Other Loan Documents -- An "Event of Default" (if so defined) or, if not so defined, a default occurs under a Loan Document other than this Deed of Trust.

10.01.14 Death -- The death, dissolution or termination of the Grantor or any other person liable or responsible for the observance or performance of the obligations and covenants under this Deed of Trust.

10.01.15 Change in Law -- The passage of any law or the decision of any court rendering or declaring any of the covenants and agreements set out in the Note, this Deed of Trust or any other Loan Document to be legally unenforceable, inoperative, void or voidable.

10.01.16 Material Change -- A material adverse change occurs in the Grantor's financial condition, or the Lender believes the prospect of payment or performance of the obligation and covenants under this Deed of Trust is impaired, or the Lender otherwise believes itself insecure.

10.01.17 Ground Lease -- The failure of the Grantor to perform or observe any of Grantor's obligations or covenants under the Ground Lease, if applicable.

10.02 Payment or Performance by Trustees or Beneficiary -- Upon Default, the Trustees or the Beneficiary may, at their option, make any payments or take any other actions they deem necessary or desirable to cure the Default or conserve the Trust Property. The Grantor shall, upon demand, reimburse the Trustees or the Beneficiary for all sums so advanced or expenses incurred by them, together with interest at the Penalty Rate from the date of advance or payment of the same, which sums shall be secured by this Deed of Trust. The Trustees or the Beneficiary may enter upon the Trust Property without prior notice to the Grantor or judicial process and may take any action to enforce its rights under this Section 10.02 without liability to the Grantor.

10.03 Possession by Trustees or Beneficiary -- Upon the occurrence of an Event of Default and to the extent permitted by law, the Trustees or the Beneficiary may enter upon and take possession of the Trust Property without notice to the Grantor, judicial process, or the appointment of a receiver. The Trustees or the Beneficiary may exclude all persons from the Trust Property and may proceed to Operate the Trust Property and receive all Rents. The Trustees or the Beneficiary and the Trustees shall have the right as agent for the Grantor to Operate the Trust Property and carry on the business of the Grantor, either in the name of the Grantor or otherwise. Neither the Trustees nor the Beneficiary shall be liable to the Grantor for taking possession of the Trust Property, as aforesaid, nor shall they be required to make repairs or replacements, and they shall be liable to account only for Rents actually received by them. All Rents collected by the

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0083, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0084, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

Trustees or the Beneficiary shall be applied (a) first, to pay all expenses incurred in taking possession of the Trust Property, (b) second, to pay costs and expenses to Operate the Trust Property and/or to comply with the terms of the Loan Documents, including reasonable attorney's fees, (c) third, to pay all sums secured by the Loan Documents in the order of priority selected by Beneficiary, and (d) fourth, with the balance, if any, to the Grantor or such other Person as may be entitled thereto. Neither the Assignment of Rents and Leases nor any other assignment of Leases shall impose upon Trustees or Beneficiary any liability to perform Grantor's obligations under any Lease.

10.04 Acceleration of the Note -- Upon an Event of Default, Beneficiary may, at its option and without any notice to the Grantor, declare the entire balance of the Note and all other amounts due under the Loan Documents, immediately due and payable. Acceleration of maturity, once claimed by the Beneficiary may, at the option of the Beneficiary, be rescinded by written acknowledgment to that effect by the Beneficiary, but the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

10.05 Collection of Rents -- Upon the occurrence of an Event of Default and written demand by the Beneficiary to the Tenants, all Rents shall be payable directly to the Beneficiary, as more fully set forth in Section 7.06 herein.

10.06 Power of Sale and Assent to a Decree -- Upon the occurrence of an Event of Default, the Grantor assents to the passage of a decree for the sale of the Trust Property by any court having proper jurisdiction, and further authorizes and empowers the Trustees to sell the Grantor's interest in the Trust Property by power of sale or assent to decree in accordance with the Laws of the jurisdiction in which the Trust Property is located and without prior judicial hearing.

If Lender invokes the power of sale or an assent to decree is passed for the sale of the Trust Property, Lender shall send in the manner prescribed by the Laws of the jurisdiction in which the Trust Property is located to Borrower and to the other persons prescribed by said laws written notice of the occurrence of an event of default and of Lender's election to cause the Trust Property to be sold. Trustee shall give notice of sale by such public advertisements as Trustee shall deem proper to protect the interests of Borrower and Lender and/or pursuant to said Laws. After the lapse of such time as may be required by said Laws, Trustee may sell the Trust Property at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. The Trust Property or any interest therein may be sold upon such terms and in as many parcels as the person conducting the sale may, in its sole discretion, elect.  Trustee may postpone sale of all or any parcel of the Trust Property by public announcement at the time and place of any previously scheduled sale. No re-advertisement of any sale shall be required if the sale is adjourned by announcement, at the time and place set therefor, of the date, time, and place to which the same is to be adjourned.

The foreclosure sale may be made subject to one or more tenancies of the Trust Property entered into after the date of this Deed of Trust or subordinate hereto if the required advertisement of sale so discloses. Trustee shall deliver to the purchaser Trustee's deed conveying the Trust Property so sold without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prime facie evidence of the truth of the statements made therein.

Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies to which Lender is entitled under this Article 10 including, but not limited to, attorney's fees and costs of documentary evidence, abstracts and title reports. Immediately upon the first insertion of any required or elected advertisement for the sale of the Trust Property as above provided there shall become due to the person making the sale all expenses incident to the advertisement.

10.07 Application and Proceeds of Sale -- Upon a foreclosure sale, the purchaser shall receive that portion of or interest in the Trust Property purchased by it free from any claims of the Grantor and without any liability to see to the application of the purchase money. The net proceeds from the sale, after deduction of all costs of the sale, shall be applied (a) first, to pay all expenses incurred in taking possession of the Trust Property, (b) second, to pay costs and expenses to Operate the Trust Property, including reasonable attorney's fees, (c) third, to pay all sums secured by or due under the Loan Documents in the order of priority determined by the Beneficiary, and (d) fourth, the balance, if any, to the Grantor or to other Persons entitled thereto.

10.08 Deficiency of Proceeds -- If, after a foreclosure sale, a deficiency exists in the net proceeds of such sale, the Beneficiary shall be entitled to a deficiency judgment or decree for such deficiency which shall bear interest at the Penalty Rate.

10.09 Trustee's Commission -- Upon a foreclosure sale of any portion of or interest in the Trust Property, and in addition to all other legal fees and costs permitted hereby or under the Law of the jurisdiction in which the Trust Property

is located, the Trustees shall be entitled to a commission to either a) 5% of the then principal amount secured by this Deed of Trust; or b) an amount equal to the maximum allowable lawful rate based upon the then principal amount secured by this Deed of Trust, whichever is greater. In the event any portion of the Trust Property is advertised for foreclosure sale and not sold, the Trustees shall be entitled to a commission equal to one-half (1/2) of the commission provided in case of foreclosure sale, to be computed on the amount of the Loan then outstanding. The person making the sale shall not be required to accept payment of the amounts secured hereby unless accompanied by all expenses of the proceedings and all commissions due.

10.10 Insurance or Condemnation After Deficiency -- If the Trust Property is sold at a foreclosure sale prior to receipt of an insurance or a condemnation award or payment, the Beneficiary shall receive and apply the proceeds of the award or payment toward the satisfaction of any deficiency resulting from the foreclosure sale, whether or not a deficiency judgment is sought, recovered, or denied.

10.11 Right of the Beneficiary to Bid – The Beneficiary and/or the Trustees may bid and become the purchaser at a foreclosure sale under this Deed of Trust.

10.12 Trustee's Bond -- The Grantor waives any right to require the person authorized to make the sale to post a bond in any foreclosure proceeding.

10.13 Appointment of a Receiver – Upon the occurrence of an Event of Default, the Beneficiary shall be entitled to the immediate appointment of a receiver for the Trust Property, without regard to the value of the Trust Property or the solvency of any person liable for payment of the amounts due under the Loan Documents.

10.14 Remedies Cumulative – All rights, powers, and remedies of the Beneficiary or the Trustees provided for in the Loan Documents are cumulative and concurrent and shall be in addition to and not exclusive of any appropriate legal or equitable remedy provided by Law or contract. Exercise of any right, power, or remedy shall not preclude the simultaneous or subsequent exercise of any other by the Beneficiary or the Trustees.

10.15 Consent to Jurisdiction and Venue -- The Grantor consents to being sued in any jurisdiction where any of the Trust Property is located or where Grantor resides or is located or where Beneficiary resides or is located, at Beneficiary's sole discretion.

10.16 Rights Under the Uniform Commercial Code -- Upon the occurrence of an Event of Default, the Grantor shall assemble and make available to the Beneficiary and the Trustees those portions of the Trust Property which consist of personal property at a place to be designated by the Trustees, and the Beneficiary and the Trustees may exercise all the rights and remedies of a secured party under the Uniform Commercial Code. Any notices required by the Uniform Commercial Code shall be deemed reasonable if mailed certified mail, return receipt requested, postage prepaid, by the Beneficiary or the Trustees to the Grantor. Disposition of the Trust Property shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the County/City where the Trust Property is located.

10.17 Right to Determine Which Leases Survive -- If disclosed in the advertisement of sale, a foreclosure sale may be made subject to one or more Leases of the Trust Property.

10.18 Waiver of Statute of Limitations -- Borrower hereby waives the right to assert any statute of limitations as a bar in the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Deed of Trust.

10.19 Waiver of Marshalling -- Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Deed of Trust and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waives any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

10.20 Uniform Instrument; No Presumption Against Drafter -- This form of instrument combines uniform covenants

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0085, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0086, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property and related fixtures. This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event any foreclosure procedure or provision called for in this Deed of Trust fails to comply with the lawful foreclosure procedure in the State or jurisdiction in which the Property is located, or technical requirements must be met to foreclose on the Trust Property that are not contained or accounted for herein, the lawful procedures/technical requirements shall be deemed to supplant the provisions herein which are inconsistent or which have been omitted, and shall be incorporated herein by reference, and any defenses to unlawful or defective foreclosure as a result of such inconsistencies or omissions are hereby waived by Grantor. There shall be no presumption against the drafter of this Deed of Trust in the interpretation hereof.

## 11.00 MISCELLANEOUS

11.01 Waivers -- No term of any Loan Document shall be deemed waived unless the waiver shall be in writing and signed by the parties making the waiver.  Any failure by the Beneficiary or the Trustees to insist upon the Grantor's strict performance of any of the terms of the Loan Documents shall not be deemed or construed as a waiver of those or any other terms. Any delay in exercising or enforcing any rights with respect to a Default or an Event of Default shall not bar the Beneficiary or the Trustees from exercising any rights under the Loan Documents, or at law or in equity.

11.02 Consents --

11.02.1 The Beneficiary may (a) release any person liable under the Loan Documents, (b) release any part of the security, (c) extend the time of payment of the Loan, and/or (d) modify the terms of the Loan Documents, regardless of consideration and without notice to or consent by the holder of any subordinate lien on the Trust Property. No release, extension or modification of the security held under the Loan Documents shall impair or affect the lien of this Deed of Trust or the priority of such lien over any subordinate lien.

11.02.2 Regardless of whether a Person has been given notice or has given its prior consent, it shall not be relieved of any obligation under any Loan Documents by reason of (a) the failure of the Beneficiary, the Trustees, or any other Person to take any action to foreclose, or otherwise enforce any provision of the Loan Documents, (b) the release of any other Person liable under any Loan Document, (c) the release of any portion of the security under the Loan Documents, or (d) any agreement or stipulation between any subsequent owners of the Trust Property and Beneficiary extending the time of payment or modifying the terms of any Loan Document.

11.03 Headings -- All Article and Section headings are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Deed of Trust.

11.04 Notices -- All notices shall be in writing and, unless otherwise specified in a written notice, shall be sent to the respective addresses of the parties as set forth in the Note, or as updated by Grantor by written notice to Lender.

A notice may be emailed or hand-delivered, or sent by overnight courier, or mailed, postage prepaid, first class, registered or certified mail as set forth in the Note. Any notice sent shall be deemed to have been received as set forth in the Note.

11.05 Binding Effect -- No transfer of any portion of the Trust Property or any interest thereon shall relieve any transferor of its obligations under the Loan Documents. No transferor of any obligation under any Loan Document shall be relieved of its obligations by any modification of any Loan Document subsequent to the transfer.

11.06 Amendment – No Loan Document may be modified except in writing signed by (a) the Beneficiary and/or the Trustees, and (b) Grantor.

11.07 Severability -- In the event any provision of this Deed of Trust shall be held invalid or unenforceable by an court of competent Jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

11.08 Notices from Governmental Authorities Affecting the Trust Property -- Any notice from any governmental or quasi-governmental authority or corporation with respect to the Trust Property sent to or known by the Grantor shall be promptly transmitted to the Beneficiary and the Trustees.

11.09 Applicable Law – This Deed of Trust shall be governed by the Laws of the State where the Trust Property is

located, without regard to the principles of conflict of laws.

11.10 Time of the Essence — Time is of the essence with respect to the Loan Documents.

11.11 Jury Waiver — THE UNDERSIGNED AND THE LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND THE LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE LOAN DOCUMENTS.

11.12 Effect of Payments — Any payment or other performance made in accordance with the Loan Documents by any Person other than Grantor shall not entitle such Person to any right of subrogation under the Loan Documents, unless expressly consented to in writing by the Beneficiary.

11.13 Word Forms — The use of any gender, tense, or conjugation herein shall be applicable to all genders, tenses, and conjugations. The use of the singular shall include the plural and the plural shall include the singular.

11.14 For Properties Subject to Ground Lease —

11.14.1 Borrower's Compliance With its Obligations Under the Ground Lease — The Borrower shall comply with all of its obligations under the Ground Lease.

11.14.2 Default or Notice of Default Under the Ground Lease — The Borrower shall give prompt written notice to the Beneficiary and the Trustees of any default by the Borrower in its performance of its obligations under the Ground Lease and shall promptly forward to the Beneficiary and the Trustees copies of any notices which the Borrower receives from the Ground Lessor claiming any default by the Borrower in complying with the obligations under the Ground Lease.

11.14.3 Estoppel Certificates of the Ground Lessor — If requested by the Beneficiary or the Trustees, the Borrower will use all reasonable efforts to obtain estoppel certificates from the Ground Lessor stating (a) that the Ground Lease is unmodified and in full force and effect. or, in the event the Ground Lease has been modified, the nature of such modification, (b) that the Borrower is not in default in its performance of its obligations under the Ground Lease, or, in the event the Ground Lessor is in default, the nature of such default, and (c) the last date on which the rent was paid and the amount of such payment.

11.14.4 Proof of Payments Required to be Made Under the Ground Lease — When requested by the Beneficiary or the Trustees the Borrower will promptly furnish proof of payment of all items which the Borrower is obligated to pay pursuant to the terms of the Ground Lease.

11.14.5 No Surrender or Modification of Ground Lease without the Consent of the Beneficiary; No Merger of Title — The Borrower will not, without the prior written consent of the Beneficiary, terminate, modify, or surrender the Ground Lease. Until the Loan is fully paid and this Deed of Trust is released of record, the leasehold estate of the Grantor in the Land shall not merge with the fee title in the Land, notwithstanding the fact that both estates are held by a single Person.

11.14.6 Beneficiary's Right to Cure Borrower's Default Under the Ground Lease — Should the Borrower be in default in complying with any of its obligations under the Ground Lease the Beneficiary shall have the right, but not the duty, to cure the default. A cure by the Beneficiary shall not remove or waive, as between the Beneficiary and the Borrower, the corresponding default under the provisions of this Deed of Trust. All monies expended by the Beneficiary in connection with the cure, including reasonable attorney's fees, shall bear interest at the Penalty Rate, shall be payable upon demand, and shall be secured by this Deed of Trust.

---

(SIGNATURES APPEAR ON NEXT PAGE)

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0087, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

WITNESS the execution hereof by the Grantor and the affixing of the Grantor's seal.

WITNESS:                                         Borrower:

_X. Kathryn Allen_ (signature)                   _Trudah Mills-Harding_ (signature) _____(SEAL)
                                                 Trudah Mills-Harding (a/k/a Trudah A. Mills and Trudah M. Harding)

_____                         _____(SEAL)


STATE OF _District of Columbia_ COUNTY OF _____, to wit:

I HEREBY CERTIFY that on this _8th_ day of _December_____, 20 _17_, before me, a Notary Public of the State aforesaid, personally appeared **Trudah Mills-Harding (a/k/a Trudah A. Mills and Trudah M. Harding),** known to me, or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within Deed of Trust, and who acknowledged that they executed the same for the purposes therein contained. At the same time also appeared _~~Trudah Mills Harding~~ Cynthia Earle_, Agent for the within named Beneficiary and made oath in due form of law that the consideration therein set forth in said Deed of Trust is true and bona fide as therein set forth, that the entire sum of the herein described Deed of Trust was paid over and disbursed by the Deed of Trust to either the Grantor or the person responsible for the disbursement of funds in the closing transaction, or their respective agents at or before the final and complete execution of this Deed of Trust.

WITNESS my hand and Notarial Seal.

_X. Kathryn Allen_ (signature)
NOTARY PUBLIC

My Commission Expires: _____

S. KATHRYN ALLEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2019



MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0088, MSA_CE63_55498. Date available 01/31/2018. Printed 12/05/2018.

EXHIBIT A
LEGAL DESCRIPTION


Lot 5, in Block B, in the subdivision known as, "PLAT THREE, RIVERS EDGE", per Plat Book 105 at Plat 12031, and recorded among the Land Records of Montgomery County, MD.

For Informational Purposes Only:
Property Address: 13604 Canal Vista Ct., Potomac, MD 20854
Tax ID: 06-01827518

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0089, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

## Affidavit Filed in Accordance with Real Property Article, §3-104.1, Annotated Code of Maryland
## Affidavit in Lieu of Maryland Mortgage Lender or
## Maryland Mortgage Originator Licensee Information

I, Jeffrey P. Shiller, Esq., hereby affirm, under the penalties of perjury, that I am the Authorized Agent of Hard Money Bankers, LLC ("Lender") that made the Loan. The Lender's address is 10015 Old Columbia Rd., Suite H-125, Columbia, Maryland 21046. I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-501 through 11-524, Annotated Code of Maryland. The employee of the Lender who originated the Loan is exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

I SOLEMNLY AFFIRM, under the penalties of perjury and upon personal knowledge, that the contents of the foregoing paper are true.

_____          _____
Signature of Affiant                                    Date
Printed Name: Jeffrey P. Shiller
Title: Authorized Agent

I HEREBY CERTIFY that the within instrument was prepared by or under the supervision of the undersigned, an attorney duly admitted to practice before the Court of Appeals of Maryland.

_____
Jeffrey P. Shiller, Attorney

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0090, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

## AFFIDAVIT MADE PURSUANT TO SECTION 12-108(g)(3)
## OF THE TAX-PROPERTY ARTICLE OF
## THE MARYLAND ANNOTATED CODE OF MARYLAND

The undersigned make(s) oath, in due form of law and under the penalties of perjury that the following is true to the best of my/our knowledge, information and belief, in accordance with Section 12-108(g)(3) of the Tax property Article of the Annotated Code of Maryland, as follows:

1.  That I/We am/are original mortgagor(s) of the mortgage(s)/deed(s) of trust recorded at Liber 51689, Folio 471, among the Land Records of Montgomery County;

2.  That the mortgage property is/our principal residence; and

3.  That the aggregate amount of unpaid principal of the original mortgages or deeds of trust being refinanced totals $350,000.00.

_____
Trudah Mills-Harding

District of Columbia          ) ss

Sworn and subscribed before me a Notary Public for the aforesaid jurisdiction on this 8th day of December, 2017.

_____
Notary Public
My Commission Expires:

S. KATHRYN ALLEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2019

File No.: MD-HARDING-R3817

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0091, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

## State of Maryland Land Instrument Intake Sheet

☐ **Baltimore City**   ☑ **County:** Montgomery

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*
**(Type or Print in Black Ink Only—All Copies Must Be Legible)**

**1 Type(s) of Instruments**

( ☐ Check Box if addendum Intake Form is Attached.)

| Deed ☑¹ Deed of Trust | Mortgage Lease | ² Other _____ | Other _____ |
|---|---|---|---|

**2 Conveyance Type** Check Box

| Improved Sale Arms-Length *[1]* | Unimproved Sale Arms-Length *[2]* | Multiple Accounts Arms-Length *[3]* | Not an Arms-Length Sale *[9]* |
|---|---|---|---|

**3 Tax Exemptions** (if applicable) Cite or Explain Authority

| Recordation | |
|---|---|
| State Transfer | |
| County Transfer | |

**4 Consideration and Tax Calculations**

| Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ | Transfer Tax Consideration | $ |
| Any New Mortgage | $ 415,000.00 | X ( ) % = | $ |
| Balance of Existing Mortgage | $ 350,000.00 | Less Exemption Amount – | $ |
| Other: | $ 155,000.00 | Total Transfer Tax = | $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | X ( ) per $500 = | $ |
| Full Cash Value: | $ | TOTAL DUE | $ |

**5 Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ 20.00 | Agent: |
| Surcharge | $ 95.00 | $ 95.00 | Tax Bill: |
| State Recordation Tax | $ 578.50 | $ 801.00 | |
| State Transfer Tax | $ | $ | C.B. Credit: |
| County Transfer Tax | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

**6 Description of Property**

SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| 06 | 01827518 | | | | ☐ (5) |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| Plat three Rivers Edge | 5 | B | | | |

**Location/Address of Property Being Conveyed (2)**
13604 Canal Vista Court Potomac MD 20854

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|
| | |

Residential ☑ or Non-Residential ☐   Fee Simple ☑ or Ground Rent ☐   Amount: _____
Partial Conveyance? ☐ Yes ☑ No   Description/Amt. of SqFt/Acreage Transferred: _____

If Partial Conveyance, List Improvements Conveyed:

**7 Transferred From**

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| Trudah Mills-Harding | Trudah Mills-Harding |
| **Doc. 1 – Owner(s) of Record, if Different from Grantor(s)** | **Doc. 2 – Owner(s) of Record, if Different from Grantor(s)** |
| | |

**8 Transferred To**

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| Jeffrey P. Shiller (trustee) | Jeffrey P. Shiller (trustee) |

**New Owner's (Grantee) Mailing Address**
13604 Canal Vista Court Potomac MD 20854

**9 Other Names to Be Indexed**

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|
| Hard Money Bankers LLC | Hard Money Bankers LLC |

**10 Contact/Mail Information**

| Instrument Submitted By or Contact Person | |
|---|---|
| Name: Cindy Eagle | ☑ Return to Contact Person |
| Firm   Answer Title | ☐ Hold for Pickup |
| Address: 10 G Street, NE, Suite 460 | |
| Washington, DC 20002   Phone: (202) 204-0600 | ☑ Return Address Provided |

**11** IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTCOPY MUST ACCOMPANY EACH TRANSFER

**Assessment Information**

☑ Yes ☐ No   Will the property being conveyed be the grantee's principal residence?
☐ Yes ☑ No   Does transfer include personal property? If yes, identify: _____
☐ Yes ☑ No   Was property surveyed? If yes, attach copy of survey (if recorded, no copy required).

**Assessment Use Only – Do Not Write Below This Line**

☐ Terminal Verification   ☐ Agricultural Verification   ☐ Whole   ☐ Part   ☐ Tran. Process Verification

| Transfer Number | | Date Received: | | Deed Reference: | | Assigned Property No.: | |
|---|---|---|---|---|---|---|---|
| Year | 20 | 20 | Geo. | Map | Sub | Block | |
| Land | | | Zoning | Grid | Plat | Lot | |
| Buildings | | | Use | Parcel | Section | Occ. Cd. | |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | | |

REMARKS:

Distribution:   White – Clerk's Office   Canary – SDAT
Pink – Office of Finance   Goldenrod – Preparer
AOC-CC 300 (4/05)

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0092, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

Space Reserved for Circuit Court Clerk Recording Validation

Space Reserved for County Validation

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 55536, p. 0093, MSA_CE63_55493. Date available 01/31/2018. Printed 12/05/2018.

```
LR - DOT/MTG (Over 9
pages)        75.00
Name: MILLS-HARDING
Ref:
LR - DOT/Mortgage
Surcharge      40.00
======================
SubTotal:      115.00
======================
Total:         115.00
01/25/2018   02:52
                CC15-FG
#9745662 CC0602 -
Montgomery
County/CC06.02.05 -
Register 05
```



## DOCUMENT VALIDATION PAGE
FOR CLERK'S USE ONLY
(EXCLUDED FROM PAGE COUNT FOR CERTIFIED COPY)

### BARBARA H. MEIKLEJOHN
Clerk of the Circuit Court for Montgomery County
50 Maryland Avenue
Rockville, Maryland 20850
Recording and Licensing
(240) 777-9470

Exhibit 4

## Settlement

From:   William Johnson (wcjjatty@yahoo.com)

To:   cranberryj5548@gmail.com

Date:   Friday, September 17, 2021, 07:19 PM EDT

Hello Mrs. Harding:

Congratulations!!!  The Defendant has agreed to the $899,000.00 settlement amount.  The following are the terms to be included in the settlement agreement:

- Payment of $899,000.00 to satisfy the loans must be received 3/31/22.  Debtor will be in default if not paid by 3/31/22.

- Debtor can pre-pay the loans and reduce the total payoff by $115.27 per diem for the first, $ 43.05 per diem for the second.

- Regardless of when paid, both loans must be paid in full at the same time.

- Debtor agrees that upon default, Creditor shall be granted relief from stay immediately with the Rule 4001 14 day delay period waived.

- An equitable servitude shall be placed for a period of two years with respect to debtor's liens and debtor's rights against the property from the date relief from stay occurs (if it occurs).

- Debtor shall be prohibited from refiling bankruptcy for a period of 180 days after dismissal of the bankruptcy case.

- All parties release all claims raised and not raised with respect to the loans at issue in the adversary case, with prejudice.

- All parties agree to pay their own attorney's fees.

The terms are as we had discussed.  Should you have any questions or concerns please feel free to contact me.

### *The Johnson Law Group, LLC*
William C. Johnson, Jr. Esq., MBA, LL.M
6305 Ivy Lane
Suite 630
Greenbelt, Maryland 20770
William@JohnsonLG.Law

Licensed in:   MD, DC
Office:          (301) 477-3450
Fax:             (301) 477-4813
Cell:            (202) 431-2650

Exhibit 5

## Settlement

From:    William Johnson (wcjjatty@yahoo.com)

To:    cranberryj5548@gmail.com

Date:    Monday, October 4, 2021, 01:56 PM EDT

Hello Trudah:

I hope all is well.  Attached you will find the Settlement Motion and Order with the terms we negotiated.  Pleae review and discuss with me any questions you may have,  Thank you.

### *The Johnson Law Group, LLC*
William C. Johnson, Jr. Esq., MBA, LL.M
6305 Ivy Lane
Suite 630
Greenbelt, Maryland 20770
William@JohnsonLG.Law

Licensed in:   MD, DC
Office:          (301) 477-3450
Fax:             (301) 477-4813
Cell:            (202) 431-2650



2021-10-04 9019 Application to Compromise Contraversy - Order.pdf
127.6kB



2021-10-04 9019 Application to Compromise Contraversy.pdf
144.5kB

Exhibit 6

## Re: Trudah

From:   William Johnson (wcjjatty@yahoo.com)

To:     cranberryj5548@gmail.com

Date:   Monday, October 11, 2021, 11:43 AM EDT

Mrs. Harding, I will still get paid when you refinance or sell the property.  I am not going to place my fees in front of you keeping your property.  Without the Adversary being settled, you will assuredly lose your property.  That does not sit well with me.  So, I am willing to wait.

### *The Johnson Law Group, LLC*

William C. Johnson, Jr. Esq., MBA, LL.M
6305 Ivy Lane
Suite 630
Greenbelt, Maryland 20770
William@JohnsonLG.Law

Licensed in:   MD, DC
Office:        (301) 477-3450
Fax:           (301) 477-4813
Cell:          (202) 431-2650

On Monday, October 11, 2021, 11:28:55 AM EDT, Trudah Harding <cranberryj5548@gmail.com> wrote:

Hello Mr. Johnson,
Thank you, I received the corrected copy of the two loans.  Mr. Johnson are you sure that you want to proceed with this adversary case this way? This means that you will not be paid if we don't try and see if we win.  I hate to see us loose like 'this, but if this is what you think we should do I will go forward with this knowing that you will not be paid, I am truly sorry.
I would like to thank you for all your efforts in standing by me through all of this, I just wanted us to win.
Than you from the bottom of my heart.
Trudah
Sent from my iPhone

Entered: November 19th, 2021
Signed: November 18th, 2021

**SO ORDERED**

Exhibit 7



**THOMAS J. CATLIOTA**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (GREENBELT)

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **TRUDAH A. HARDING** | ) | **Case No. 19-15399 TJC** |
| | ) | **(Chapter 13)** |
| **Debtor.** | ) | |
| | ) | |
| | ) | |
| **TRUDAH A. HARDING** | ) | |
| | ) | |
| **Plaintiff/** | ) | |
| **Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Adversary Case No. 19-00350 TJC** |
| | ) | |
| **HARD MONEY BANKERS, LLC** | ) | |
| | ) | |
| **Defendant/** | ) | |
| **Counter-Plaintiff.** | ) | |
| | ) | |

**CONSENT ORDER GRANTING CONSENT MOTION FOR APPROVAL OF**
**SETTLEMENT AND COMPROMISE OF CONTROVERSY BETWEEN THE DEBTOR**
**AND HARD MONEY BANKERS, LLC –**
**RELIEF INCLUDES EQUITABLE SERVITUDE**

UPON CONSIDERATION of the Consent Motion for Approval of Settlement and

Compromise of Controversy ("Motion") filed by the Plaintiff, Trudah A. Harding ("Plaintiff" or

"Debtor") and Hard Money Bankers, LLC ("HMB" or "Creditor"), and the Court finding good

cause to grant the Motion, and

**FINDING** that Creditor is a secured creditor of the Debtor whose first of two claims is based upon a certain Commercial Flat Rate Note with Balloon Payment (the "First Note") executed by the Debtor.  Repayment of said First Note is secured by that certain Deed of Trust, Assignment of Rents and Security Agreement dated December 8, 2017 and recorded in Book 55536, at Page 70 among the land records of Montgomery County, Maryland (the "First Deed of Trust") against the property located at 13604 Canal Vista Court, Potomac, MD 20854 (the "Property"); and

**FINDING** that Creditor's second claim is based upon a certain Commercial Flat Rate Note with Balloon Payment (the "Second Note") executed by the Debtor.  Repayment of said Second Note is secured by that certain Second Deed of Trust, Assignment of Rents and Security Agreement dated December 8, 2017 and recorded in Book 55536, at Page 94 among the land records of Montgomery County, Maryland (the "Second Deed of Trust") against the Property; and

**FINDING** that Creditor filed a proof of claim evidencing the First Note and First Deed of Trust ("Claim No. 3"); and

**FINDING** that Creditor filed a proof of claim related to the Second Note and Second Deed of Trust ("Claim No. 4"); it is by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the  Motion is hereby GRANTED, and it is further

**ORDERED**, that the proposed settlement described in the Motion be and is hereby APPROVED; and it further

**ORDERED**, that Debtor shall pay the total sum of $899,000.00 (which equals the discounted payoff of the loan evidenced by Proof of Claim 3 in the amount of $679,020.56, plus the discounted payoff of the loan evidenced by Proof of Claim 4 in the amount of $219,979.44) to satisfy the indebtedness evidenced by Claim No. 3 and Claim No. 4 on or before March 31, 2022.

Debtor is permitted pay off the indebtedness evidenced by Claim No. 3 and Claim No. 4 in advance of March 31, 2022, and, if Debtor pays the total indebtedness evidenced by Claim No. 3 and Claim No. 4 before March 31, 2022, the total indebtedness evidenced by Claim No. 3 and Claim No. 4 shall be reduced by the per diem rate of $158.32 (which equals the discounted per diem rate of $115.27 for the loan evidenced by Proof of Claim 3, plus the discounted per diem rate of $43.05 for the loan evidenced by Proof of Claim 4). For example, if Debtor pays off the indebtedness evidenced by Claim No. 3 and Claim No. 4 on March 20, 2022, the payoff balance of Claim No. 3 and Claim No. 4 shall be reduced by $1,741.52 (11 days x $158.32 reduced from $899,000.00) in consideration of Debtor's early pay off of the indebtedness evidenced by Claim No. 3 and Claim No. 4; and it is further

**ORDERED**, that Debtor shall pay the indebtedness evidenced by Claim No. 3 and Claim No. 4 at the same time. Debtor shall not be permitted to pay off only the indebtedness evidenced by Claim No. 3 or Claim No. 4 at different times; and it is further

**ORDERED**, that Debtor shall be in default under this Order and under the terms of the loans evidenced by Claim No. 3 and Claim No. 4 if Debtor does not pay off the indebtedness evidenced by Claim No. 3 and Claim No. 4 as required under this Order by March 31, 2022; and it is further

**ORDERED**, that in the event Debtor defaults due to the failure of the Debtor to pay the indebtedness evidenced by Claim No. 3 and Claim No. 4 as required under this Order:

* Creditor shall be entitled to the full balance due under the terms of its loans evidenced by Claim No. 3 and Claim No. 4 and the balanced owed under the loans evidenced by Claim No. 3 and Claim No. 4 shall not be reduced;

* Creditor shall be granted immediate relief from the automatic stay of 11

U.S.C. § 362(a), which shall not be re-imposed for any reason, and any additional stay under Fed. R. Bankr. P. 4001 shall be deemed to be waived; and

* An equitable servitude shall be imposed with respect to the Property for a period of two years from the date relief from the automatic stay of 11 U.S.C. § 362(a) is granted pursuant to this Order; and

* if relief from the automatic stay of 11 U.S.C. § 362(a) and the imposition of an equitable servitude occurs under the terms of this Order, this relief shall also extend to any foreclosure purchaser of the Property to obtain possession of the Property; and it is further

**ORDERED**, that in the event Debtor's bankruptcy case identified by Case No. 19-15399-TJC is dismissed for any reason, Debtor shall be prohibited from refiling bankruptcy for a period of 180 days from the date of dismissal; and it is further

**ORDERED**, that the relief granted under this Order shall survive the dismissal of this adversary case and shall survive the dismissal or conversion of Debtor's bankruptcy case to a case under any other chapter of the United States Bankruptcy Code; and it is further

**ORDERED**, that upon the entry of this Order, Debtor and Creditor shall be deemed to have released, *with prejudice*, all claims raised by Debtor or Creditor and any and all claims that could have been raised in relationship to the claims raised by Debtor or Creditor in this adversary case and/or with respect to Claim No. 3 and Claim No. 4, and the Debtor and Creditor are hereby prohibited from raising any claims intended to be released by this Order in this Court or any other court; and it is further

**ORDERED** that the release of claims confirmed by this Order shall not otherwise impact

the validity or enforceability of the loan documents associated with the loans evidenced by Claim No. 3 and Claim No. 4; and it is further

**ORDERED**, that Debtor and Creditor shall each be solely responsible for the payment of their own attorney's fees and costs incurred in this adversary case and in Debtor's bankruptcy case referenced herein and neither party shall seek recovery of these attorney's fees and costs from the other party; and it is further

**ORDERED** that Debtor shall not file any plan in her bankruptcy case referenced herein that treats the Creditor's Claim No. 3 or Claim No. 4 differently than the treatment provided under this Order.  In the event a plan is confirmed with treatment of Creditor's Claim No. 3 or Claim No. 4 that is inconsistent with the terms of this Order, the terms of this Order shall control the treatment of Creditor's Claim No. 3 and Claim No. 4; and it is further

**ORDERED**, that the terms of this Order and the relief granted under this Order shall be binding upon and insure to the benefit of the Debtor and Creditor, their agents, successors and assigns.

**AGREED AS TO FORM AND SUBSTANCE:**

/s/Benjamin P. Smith
Benjamin P Smith, Esq. (Bar No. 17680)
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
*Counsel for Hard Money Bankers, LLC*

/s/William C. Johnson, Jr.
William C. Johnson, Jr. (Bar No. 15651)
The Johnson Group, LLC
6305 Ivy Lane, Suite 630
Greenbelt, MD  20770
*Counsel for Trudah A. Harding*

## <u>LOCAL RULE 9011-2(b) CERTIFICATION</u>

I HEREBY CERTIFY that the terms of the copy of the consent order submitted to the court are identical to those set forth In the original consent order; and the signatures represented by the /s/_____ on the copy of the consent order submitted to the Court reference the signatures of the consenting parties obtained on the original consent order.

/s/Benjamin P. Smith_____
Benjamin P. Smith

**<u>Copies to:</u>**

Benjamin P Smith, Esq.
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854

William C. Johnson, Jr., Esq.
6305 Ivy Lane, Suite 630
Greenbelt, MD  20770

**END OF ORDER**