**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| Trudah Harding | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA No.: 2024-CAB-007124 |
| | ) | |
| William C. Johnson, Jr., Esq., | ) | DEMAND FOR JURY TRIAL |
| Defendant. | ) | |
| | ) | |
| | ) | |

## SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, the Defendant William C. Johnson, Jr., Esq., by and through counsel, hereby moves this Honorable Court for an Order granting a Motion for Summary Judgment pursuant to D.C. SCR Rule 56. In support of thereof, the defendant provides the attached Statement of Points and Authorities, memorandum, and exhibits.

## ADJUDICATION OF BIFURCATED CLAIMS

The instant Summary Judgment motion is filed pursuant to the Court's Order bifurcating the claims of the Plaintiff from the matters being pursued in the Bankruptcy Court for the District of Maryland. This is not a collection matter but rather a defense of the Plaintiff's Legal Malpractice and Breach of Fiduciary Duty claim.

## INTRODUCTION

The instant matter is a case involving the relationship between an attorney and his client. This case will explore the limitations of the attorney-client relationship, client misconduct, and the requirements of counsel in light of an unruly client that does not heed advice. In the instant matter the plaintiff was the subject of a Mortgage Foreclosure action filed in Montgomery County, Maryland.

Pursuant to the legal strategy implemented by the defendant, Plaintiff filed a Chapter 13 case to stop the foreclosure sale of her property. The lack of

1

income forced her Chapter 13 plan to be a "liquidating plan." The plaintiff's creditor Hard Money Bankers, LLC wanted the property sold to pay off its loan to the plaintiff. The plaintiff, however, filed a Consumer Protection Adversary Complaint that resulted in the parties reaching a settlement agreement.[1] Plaintiff filed the instant Complaint after breaching the settlement agreement with "Charity at its Best."[2]

## STATEMENT OF MATERIAL FACTS

1. On or about August 11, 2017, plaintiff changed her primary residence to the 13604 Canal Vista Ct., Potomac, Maryland 20854. Exhibit 2.

2. On or about December 8, 2017, Plaintiff entered into two (2) consumer credit transactions (hereinafter collectively "the transactions") with Hard Money Bankers, LLC in which they allegedly extended consumer credit to the Plaintiff subject to a finance charge, and which was initially payable to Hard Money Bankers, LLC. Exhibit 3.

3. The Plaintiff Trudah Harding allegedly informed the Hard Money Bankers, LLC that the "Property" was her principal dwelling.

4. The Hard Money Bankers LLC required the plaintiff to execute documents indicating the transaction was a commercial loan.

5. The plaintiff informed the Hard Money Bankers LLC that she was not seeking a commercial loan,

6. Hard Money Bankers, LLC told plaintiff, "not to worry" that ""it is just the forms we use for all loans."

7. The Hard Money Bankers, LLC labeled the transaction as a "Commercial Flat Rate Note with Balloon Payment."

8. The Hard Money Bankers, LLC knew or should have known the loan transaction was a "consumer credit transaction." Exhibit 3.

---

[1] Hard Money Bankers sold the underlying mortgage loan to "Charity at its Best."
[2] Plaintiff erroneously identified Rob Haertel of "Charity at its Best" as her expert. The Plaintiff filed no expert report.

9. On or about December 8, 2017, pursuant to the first transaction, the Plaintiff owed a debt in the amount of $415,000.00 to Hard Money Bankers, LLC evidenced by the "Commercial Flat Rate Note with Balloon Payment."  Exhibit 3.

10. A true and accurate copy of the credit agreement evidencing the transaction is attached hereto, Defendant's Exhibit 3, and by this reference is incorporated herein.

11. As part of the consumer transaction, the first Note was secured by a Deed of Trust against the plaintiff's principal dwelling identified as 13604 Canal Vista Ct., Potomac, Maryland 20854.

12. A true and accurate copy of the Deed of Trust evidencing the Hard Money Bankers, LLC's security interest is attached hereto, Defendant's Exhibit 3, and by this reference is incorporated herein.

13. The plaintiff was faced with a foreclosure of her residence at 13604 Canal Vista Court, Potomac, Maryland 20854.  The foreclosure case was identified as *Benjamin P. Smith v. Trudah Mills Harding* - 463268-V.

14. The parties entered a Contingency Fee Retainer Agreement whereby the Plaintiff was provided a strategy to achieve settlement of the outstanding mortgage balance. Exhibit 1.

15. Pursuant to the strategy, after defending the Montgomery County, Maryland foreclosure case, the Plaintiff filed a Chapter 13 Bankruptcy case – 19-15399 to stop the foreclosure sale of her property.

16. The Plaintiff was advised that due to her lack of income, the most feasible option was to sell the real property to achieve its Fair Market Value.

17. The lack of income forced plaintiff's Chapter 13 plan to be a "liquidating plan."

18. On May 31, 2019. The "Hard Money Bankers, LLC" filed its First Proof of claim in the amount of $519,925.01 evidencing its secured claim against the real property identified as 13604 Canal Vista Court, Potomac, Maryland

20854. The claim carried a 24% Default interest rate and costs and fee. Exhibit 3.

19. On May 31, 2019. The "Hard Money Bankers, LLC" filed its Second Proof of claim in the amount of $188,955.00 evidencing its secured claim against the real property identified as 13604 Canal Vista Court, Potomac, Maryland 20854. The claim carried a 24% Default interest rate and costs and fee.

20. In furtherance of the legal strategy the Defendant filed the Bankruptcy Adversary Proceeding case no. 19-00350 to allege the claims that would cause the Mayland Foreclosure action to end.

21. The Hard Money Bankers, LLC, opposed the claims of the Plaintiff Trudah Harding.

22. The Hard Money Bankers, LLC claimed the outstanding balance owed to it under the two (2) Deeds of Trust was $1,774,232.00.

23. The Hard Money Bankers, LLC filed a Motion for Summary Judgment, and the Plaintiff opposed the Motion. The Bankruptcy Court ruled in favor of the plaintiff when it denied the Motion for Summary Judgment and urged the parties to reach a settlement.

24. After a round of negotiations, Plaintiff made a counteroffer to the Hard Money Bankers, LLC.

25. On September 17, 2021, the Plaintiff made a counter-offer seeking to reduce the settlement amount by $18,000.00. The counter-offer amount was $899,000.00. Exhibit 9.

26. On or about September 17, 2021, the Hard Money Bankers, LLC agreed to the terms of the settlement negotiations. Exhibit 4.

27. On or about October 4, 2021, the Plaintiff was presented with the Application to Compromise Motion and Order for her review. Exhibit 5.

28. On or about October 8, 2021, the parties reached a settlement of the Plaintiff Trudah Harding's claims. The settlement required the Hard

4

Money Bankers LLC to reduce their total claim from $1,774,232,00 to $899,000.00.

29. The value of the benefit to the Plaintiff was $875,232.00.

30. After entering the Settlement Agreement, Plaintiff requested the Defendant submit to the Court the "Address Change" exhibit as a means of further reducing the settlement amount of $899,000.00.  It was explained to the Plaintiff that the Court previously denied the Motion for Summary Judgment and that there would be no more submissions of exhibits.

31. On October 11, 2021, Plaintiff confirmed her acceptance of settlement and expressed her concern as to whether defendant would be paid for his services.  Exhibit 6.

32. The defendant assured plaintiff that he would receive payment when the property was sold.  Exhibit 10.

33. On November 19, 2021, the Bankruptcy Court entered an Order granting the parties agreement to settle the Adversary Proceeding case no. 19-00350. Exhibit 7.

34. The claimant requested to be paid for services rendered in Adversary Proceeding case no. 19-00350,  The Plaintiff objected to the payment.  The Court explained to the Plaintiff that she was liable for the attorney's fees in the Adversary Proceeding and fees in the Montgomery County case.

35. The Plaintiff withdrew her objection to the payment of Attorney's Fees.

36. The Bankruptcy Court entered an Order for the Defendant in the Bankruptcy Adversary Proceeding case no. 19-00350 to be paid the amount of $61,965.00 for services rendered in that case.

37. The Plaintiff entered a real estate sales agreement with "Charity at Its Best," a non-profit philanthropic organization.  The agreement allowed the Hard Money Bankers, LLC to receive funding to pay the settlement and bankruptcy fees.

38. On March 30, 2022, the Bankruptcy Court Judge Catliota in case no. 19-15399 entered an Order allowing the Plaintiff to sell the real property to "Charity at Its Best."

39. On the date of the real estate closing, the title company refused to conduct the closing.  Despite the existence of the Court Order, the title company was in disbelief that a nearly $1 million dollar loan reduction was achieved and thereby refused to close the real property sales transaction.  See Affidavit of William Johnson.

40. The Hard Money Bankers, LLC, and "Charity at Its Best" entered a sales contract for "Charity at its Best" to purchase the underlying mortgage documents for the real property identified as 13604 Canal Vista Court, Potomac, Maryland 20854 in the amount of $899,000.00.

41. Pursuant to the agreement between the Plaintiff and "Charity at Its Best," the Plaintiff would be given one year to sell the real property to satisfy the loan used to satisfy the Bankruptcy Adversary Proceeding settlement agreement.  A failure to sale the real property by the Plaintiff would result in "Charity at its Best" to foreclose upon the Plaintiff's real property.

42. On April 26, 2022, the Hard Money Bankers, LLC, through its counsel Benjamin Smith, Esq., voluntarily dismissed the Montgomery County, Circuit Court case no. 463268-V.

43. The Plaintiff remained liable to the claimant for the contingency fee for the resolution of Montgomery County, Circuit Court case no. - 463268-V.

44. On April 26, 2022, the Plaintiff Trudah Harding dismissed the Bankruptcy case identified as 19-15399.

45. The parties communicated sparingly to determine the status of the real property or refinancing efforts by the plaintiff.

46. In February of 2024, the "Charity at its Best" informed the Plaintiff of its intent to foreclose upon the plaintiff's real property.

47. On or about April 2, 2024, Benjamin Smith instituted foreclosure proceedings against Plaintiff in Montgomery County, Maryland identified as case no. C-15-CV-24-001508.

48. On or about November 12, 2024, the Plaintiff filed a Civil Action in D.C. Superior Court, case no. – 2024-CAB-7124 alleging "Legal Malpractice." The Plaintiff's primary claim rests upon her belief that she was forced to accept a settlement of $899,000.00 because an exhibit was not introduced in settlement negotiations.

49. On or about January 29, 2026, the "Charity at its Best" foreclosed upon the Plaintiff's real property.

I.   **Standard for Review**

   a.  **Summary Judgment**

50. Defendant's Motion for Summary Judgment must be granted.  The plaintiff's pleadings, sworn declarations of facts as well as exhibits do not raise genuine issues of material fact which must be tried.  A genuine issue of material facts does not exist, and defendant is entitled judgment as a matter of law.

51. To prevail upon a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *Young v. Delaney,* 647 A.2d 784, 788 (D.C.1994). This initial showing can be made by pointing out that there is a lack of evidence to support the plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198 (D.C.1991).

52. The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations contained in its pleadings but must set forth "specific facts showing that there is a genuine issue for trial." Super. Ct. Civ. R. 56(e); *Smith v. Washington Metro. Area Transit Auth.,*

7

631 A.2d 387, 390 (D.C.1993) (requiring the non-moving party to "produce enough evidence to make out a prima facie case in support of her claim"). *Potts v. District of Columbia*, 697 a.2d 1249 (D.C. App. 1997)

53. In his "Statement of No Genuine" issues which are included in this "Motion for Summary Judgment" the defendant identifies facts that require disposition in his favor.

54. In *Colbert v. Georgetown Univ.,* 641 A.2d 469 (D.C.1994) (en banc), the full court described the applicable standard as follows:

In order to be entitled to summary judgment, [the moving party] must demonstrate that there is no genuine issue of material fact and that [it is] entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *Clyburn v. 1411 K Street Limited Partnership,* 628 A.2d 1015, 1017 (D.C.1993). The record is viewed in the light most favorable to the party opposing the motion. *Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C.1991). On appeal, we must assess the record independently, but the substantive standard applied is the same as that utilized by the trial court. *Northbrook Ins. Co. v. United Servs. Auto Ass'n,* 626 A.2d 915, 917 (D.C.1993).

*Id.* at 472.

55. "Accordingly, if an impartial trier of fact, crediting the non-moving party's evidence, and viewing the record in the light most favorable to the non-moving party, may reasonably find in favor of that party, then the motion for summary judgment must be denied." *Weakley v. Burnham Corp.,* 871 A.2d 1167, 1173 (D.C.2005).  If, however, the summary judgment record "demonstrates that, construing all of the facts and inferences to be drawn therefrom in favor of the party against whom the judgment is entered, he would not be entitled to have a jury verdict stand, we have not hesitated to hold that the grant of summary judgment is proper." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) (quoting *Time, Inc. v. McLaney,* 406 F.2d 565, 571-72 (5th Cir.), *cert. denied,* 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239

(1969)); *see also Hendel v. World Plan Exec. Council,* 705 A.2d 656, 660 (D.C.1997) (quoting *Nader* ).

56. As supported by the Courts in *Young, Nader, Cel*otex and *Pott,* combined with the arguments below, indicate the movant is entitled to Summary Judgment.

## STATEMENT OF NO GENUINE ISSUE OF MATERIAL FACT

a. **Whether the alleged Negligence of the Defendant creates a Breach of Fiduciary Duty when Plaintiff claims it is contrary to her interests**

   i. **Breach of Fiduciary Duty based upon claims of Negligence must apply a Standard of Care and shall be disposed of in the same manner**

57. The plaintiff has claimed the Defendant committed legal malpractice because she did not attain her desired result.  In spite of a wildly successful settlement agreement, plaintiff desired to maintain ownership of her real property free and clear of all liens.[3]

58. Despite receiving sage advice to sell the property, plaintiff attempted to refinance the property through a reverse mortgage.  She was denied the refinance and continued to live in the property.  Each month thereafter costs the plaintiff principal and interest payments.  The plaintiff made no payments to the lender post-settlement and squandered all of the gains achieved by the defendant pursuant to the settlement agreement.

---

[3] Plaintiff received a settlement amount that required her to repay the actual money received pursuant to the mortgage loans.

9

59. After one year passed since the settlement agreement, the lender commenced foreclosure proceedings against the Plaintiff's real property and ultimately foreclosed upon the property.

60. In an obvious display of a lack of accountability, the Plaintiff blamed the defendant for the foreclosure and her act of squandering nearly one million dollars because of her improvident refusal to sell the real property.  She actually claimed the settlement was not low enough despite her making the final counter-offer.  See Exhibit

61. The Legal Malpractice claims are wrongfully composed of false statements, bald assertions, and conclusory allegations. See Amended Complaint.

62. Most notably missing from the Summary Judgment record is an "Expert" and "Expert Report" providing a "Standard of Care."

63. The Plaintiff filed an Amended Complaint adding the claim of Breach of Fiduciary Duty.  The allegations include the following:

    a.  Acting contrary to Plaintiff's expressed interests

    b.  Pressured Plaintiff into a settlement agreement

    c.  Placing Plaintiff under duress to withdraw critical filings

    d.  Failing to act in Plaintiff's best interests.

64. The Plaintiff's "Legal Malpractice/Negligence" claims, directly or re-worded, are the same claims realleged in the  "Breach of Fiduciary Duty" claim. See Plaintiff's Amended Complaint. The table below tracks the comparatively similar, or identical, claims:

| Legal Malpractice/Negligence | Breach of Fiduciary Duty |
| --- | --- |
| Paragraph 8a-d | Paragraph 12a |
| Paragraph 8b | Paragraph 12b |
| Paragraph 8j | Paragraph 12c |
| Paragraph 8a-n | Paragraph 12d |

65. The plaintiff's position is erroneous as the filed exhibits as part of the Summary Judgment record contradict her allegations.  See Exhibits.

66. To be clear, the claims of the Plaintiff are derived from a failed attempt to circumvent a settlement agreement she negotiated with the assistance of counsel.

67. The plaintiff's factual claims indicate her desire renege as to her obligation to sell the real property.  It is bears noting the plaintiff conveniently omits that she entered a sales contract with "Charity at its Best."  Thus, when she makes a claim that she entered a Settlement Contract that she could not afford, it is clearly a misrepresentation as she was actual selling the property.

68. The plaintiff now claims the settlement amount of $899,000.00 was not low enough, or in her best interests, and that she was pressured to enter the settlement agreement.  A highly illogical deduction.

69.  A party is entitled to summary judgment if, when the facts are viewed "in the light most favorable to the non-moving party[,] ... there [are] no genuine issue[s] of material fact and [ ] the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(c); *Hosp. Temps Corp. V. District of Columbia,* 926 A.2d 131, 134 (D.C. 2007).

70. "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law." *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

71. The plaintiff's issue is not material given the dispute centers on a "Standard of Care" she cannot establish.

72. Further, requesting that a Court review an exhibit after it has already granted Summary Judgment in your favor would not be advisable.  The defendant declined said request by the plaintiff.

73. "[A]n issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' *Id.* (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

74. Plaintiff's judgment may be clouded with the sentiment of maintaining the ownership of a real property she cannot afford as opposed to selling the property and walking away with enough funds to actually purchase another home free and clear.  This presents a question as to whether the Plaintiff understands her own best interests.

75. It is nonsensical for the Plaintiff to make a claim of Breach of Fiduciary Duty when the Defendant has demonstrated the finest loyalty and achieved all matters in her best interest.

76. The Plaintiff confuses her post-settlement desire to renege on the sale of the real property with the stark reality that she has lost her home to foreclosure due to her refusal to do that which is prudent.

77. No reasonable jury could find for the plaintiff under these circumstances.

78. There is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.

**ARGUMENT**

**II.     Motion to Dismiss or Summary Judgment is Appropriate**

      **A.     The plaintiff cannot establish a Standard of Care for Breach of Fiduciary Duty**

In the District of Columbia, there are two types of legal malpractice allegations: (1) Negligence and (2) Breach of Fiduciary Duty.  The appellate Court requires a discussion of both in effort to ensure the proper application.

The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called breach of the standard of conduct)." *Bolton v. Crowley, Hoge & Fein, P.C.,* 110 A.3d 575

(2015)(*See also Crist v. Loyacono,* 65 So.3d 837 (Miss.2011) (citing *Lane v. Alfonso Realty, Inc.,* 873 So.2d 92, 98 (Miss.2004)).

The fiduciary obligations set a standard of 'conduct' analogous to the standard of 'care,' which pertains to the requisite skill, knowledge and diligence. Thus, the standard of care concerns negligence and the standard of conduct concerns a breach of loyalty or confidentiality.  Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice, § 15.2, at 624–25 (2014 ed.).

The plaintiff in the instant matter is not alleging the plaintiff's conduct was a breach of loyalty or confidentiality.  Instead, the plaintiff is contesting the legal acumen and skill of the plaintiff in the procurement of the settlement, in the evaluation and introduction of evidence, and in the communication.  All of these allegations are refuted in the documentary evidence and is relevant in determining whether the standard of care has been breached.

The claims of Breach of Fiduciary Duty all come from the same common nucleus of facts as the claim for Legal Malpractice/Negligence.

As the court said in *North Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC,* 887 F.Supp.2d 78, 83–84 (D.D.C.2012):

> "The plaintiff's four causes of action are based on the same set of facts and seek identical relief.... Courts of the District of Columbia treat such 'breach' claims—when arising from the same circumstances and seeking the same relief as a malpractice claim—as duplicative." (citations omitted). Mallen and Smith assert that "allegations that constitute negligence, which do not implicate a duty of confidentiality to loyalty, and are merely duplicative of that cause of action do not support a cause of action for fiduciary breach. In other words, when the basis for a claim of fiduciary breach arises from the same facts and seeks the same relief as a negligence claim, such a claim becomes redundant and therefore it should be dismissed. A negligence claim, however, should not prevent a factually distinct fiduciary breach cause of action."

> Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice, § 15.2, at 626–628 (2014 ed.).

13

Here, the Fiduciary Breach of Duty cause of action is not factually distinct. The Plaintiff realleged the legal malpractice facts and cause of action. The plaintiff made no inference or allegation as to the Defendant's loyalty or confidentiality. Thus, the cause of action must be disposed in the same manner as the legal malpractice claim.

In order to prove legal malpractice, a plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of." *Mills v. Cooter,* 647 A.2d 1118, 1123 (D.C.1994).

The plaintiff has failed to present an expert opinion establishing the "Standard of Care." The plaintiff identified Rob Haertel of "Charity at its Best" as her expert. The expert provided no expert report and was not retained for this case.

[T]he question of whether a defendant owes a duty to a plaintiff under a particular set of circumstances is entirely a question of law that must be determined only by the court." *District of Columbia v. Shannon,* 696 A.2d 1359, 1365 (D.C.1997) (quoting *Croce v. Hall,* 657 A.2d 307, 310 (D.C.1995)) (internal quotation marks omitted). If the applicable standard of care is not known by the average juror—*i.e.,* if the subject dealt with is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror—then expert testimony is required in order for a plaintiff to meet this burden. *National R.R. Passenger Corp. v. McDavitt,* 804 A.2d 275, 285 (D.C.2002); *see also Hill v. Metropolitan African Methodist Episcopal Church,* 779 A.2d 906, 908 (D.C.2001).

The plaintiff cannot provide any evidence that defendant breached the standard of care. To be clear, the Plaintiff's debt was settled for $899,000.00 by the claimant. It is not likely that the Plaintiff, with the same mortgage loan and relevant facts, could achieve a settlement near the prior amount.

14

In addition, thereto, the Summary Judgment record supports a dismissal of the claim for Legal Malpractice.   The information regarding the foreclosure sale of the property indicates the plaintiff did not suffer any financial damage.

Summary judgment is properly granted when the pleadings and other materials on file demonstrate that there is no genuine issue of material fact to be resolved at a trial. *See, e.g., Urban Masonry Corp. v. N & N Contractors, Inc.,* 676 A.2d 26, 30 (D.C.1996); *Burch v. Amsterdam Corp.,* 366 A.2d 1079, 1083–1084 (D.C.1976).

A defendant who moves for summary judgment may meet his burden of production by showing an absence of proof on one or more essential elements of the plaintiff's claim. The burden then shifts to the non-moving party—in this case, plaintiff—to present evidence showing the existence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment is appropriate only when the record, viewed in the light most favorable to the non-moving party, establishes that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Taylor v. Akin, Gump, Strauss, Hauer & Feld,* 859 A.2d 142, 146 (D.C.2004) (internal quotations and citations omitted).  This Court should grant the defendant's Motion for Summary Judgment.

III.    **Summary Judgment is Appropriate**

a. **Plaintiff cannot prove any behavior that violates the Standard of Conduct.**

As required by the Court, an analysis must be made of  the "Standard of Conduct."  The Plaintiff's Amended Complaint does not provide any guidance for ascertaining the alleged conduct causing a Breach of Fiduciary Duty based upon the Standard of Conduct.  The allegations include the following:

a.  Acting contrary to Plaintiff's expressed interests

      i. What are the expressed interests?  Allegedly, it was to keep the real property or to receive the lowest possible settlement.

          1. The only way to keep the real property was to pay off the mortgage.  The Plaintiff failed to pay-off the mortgage

          2. The settlement was the lowest that Equity would allow.

   b. Pressured Plaintiff into a settlement agreement

      i. The Plaintiff was an active participant in the settlement negotiations and made the final counter-offer that was accepted by the Lender.

   c. Placing Plaintiff under duress to withdraw critical filings

      i. Plaintiff while being represented by counsel, made a pro-se filing.  She was admonished by the Court.

   d. Failing to act in Plaintiff's best interests.

      i. See response to (a).

This case does not involve a law firm breaching its duty of loyalty from nearly the beginning of the lawyer-client relationship and continuously for more than one year, *see Financial General Bankshares, Inc. v. Metzger,* 523 F.Supp. 744 (D.D.C.1981), vacated on other grounds in *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768 (D.C.Cir.1982).

Nor does this case involve an attorney representing multiple parties to a transaction with conflicting interests, *see Hendry,* 73 F.3d at 401. Nor does the Plaintiff argue that defendant made unauthorized disclosures that made the settlement agreement somehow unreasonable. *See Bertelsen v. Harris,* 537 F.3d 1047, 1056–58 (9th Cir.2008) (affirming judgment for defendant law firm on a clients' claim for disgorgement where the trial court held that even if the

16

firm breached its fiduciary duty to the clients by failing to disclose potential conflicts of interest and obtain written conflict waivers, the firm's conduct was not "so egregious as to justify disgorgement of fees paid" and the firm's fee was reasonable for the work done).

Rather, this case involves a plaintiff complaining about a result she procured through an ill advised scheme to avoid selling her real property to satisfy a debt. The lack of accountability is masked in claims of legal malpractice and Breach of Fiduciary Duty. To add insult to injury, the plaintiff purposefully squandered close to $1,000,000.00 that the defendant procured for her in a settlement. To seek recompense for her bad behavior is an abomination. The Defendant's Motion for Summary Judgment must be granted.

## Conclusion

The Breach of Fiduciary Duty based upon claims of Negligence must apply a Standard of Care and must be disposed of in the same manner. To recover under the negligence theory of malpractice, the client must prove the existence of an attorney-client relationship, the acts constituting negligence, that the negligence proximately caused the injury, and the fact and extent of the injury. There exists no genuine issue of material facts to be determined by a jury and the defendant is entitled to judgment as a matter of law.

June 23, 2026

*/s/ William C. Johnson, Jr.*
William C. Johnson, Jr., Esq.
6305 Ivy Lane
Suite 630
Greenbelt, Maryland 20770
William@JohnsonLG.Law
(202) 431-2650

17

## Affidavit

I hereby affirm under penalty of perjury the foregoing factual content is true and correct to the best of my knowledge and information. I am over the age of eighteen (18) and competent to testify as to the factual content of this pleading.

June 23, 2026                               */s/ William C. Johnson, Jr.*
                                            William C. Johnson, Jr., Esq.


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 23, 2026, a copy of the foregoing was sent via first class mail, postage pre-paid, to the following:

Trudah Harding
13604 Canal Vista Court
Potomac, Maryland 20854

June 23, 2026                               */s/ William C. Johnson, Jr.*
                                            William C. Johnson, Jr., Esq.